## Case No. 24-6936

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company,
*Plaintiff-Appellant,*

and

T.A. STUDIO NEW YORK, LLC, a California limited liability company,
*Plaintiff,*

v.

MEGAN ROUP; THE SCULPT SOCIETY, LLC, a California limited liability company,
*Defendants-Appellees.*

_____

*On Appeal from the United States District Court for the Central District of California (Los Angeles),
Case No.* 2:22-cv-04735-PSG-E • *The Honorable Philip S. Gutierrez, District Judge*

## OPENING BRIEF OF PLAINTIFF-APPELLANT
## TRACY ANDERSON MIND AND BODY, LLC

STANLEY J. PANIKOWSKI
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 619.699.2643
stanley.panikowski@us.dlapiper.com

KRISTINA FERNANDEZ MABRIE
**DLA PIPER LLP (US)**
2000 Ave. of the Stars, Suite 400, N. Tower
Los Angeles, CA 90067
Tel: 310.595.3136
kristina.fernandezmabrie@us.dlapiper.com

GINA DURHAM
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2506
gina.durham@us.dlapiper.com

*Attorneys for Appellant
Tracy Anderson Mind and Body, LLC*

 COUNSEL PRESS · (213) 680-2300                PRINTED ON RECYCLED PAPER 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Tracy Anderson Mind and Body, LLC ("TAMB") discloses that it does not have a parent corporation and no publicly held corporation holds a 10% or greater ownership interest of TAMB.

Dated: February 24, 2025

*/s/ Stanley J. Panikowski*
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 619.699.2643
stanley.panikowski@us.dlapiper.com

Gina Durham
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2506
gina.durham@us.dlapiper.com

Kristina Fernandez Mabrie
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400
North Tower
Los Angeles, CA 90067
Tel: 310.595.3136
kristina.fernandezmabrie@us.dlapiper.com

*Attorneys for Appellant*
*Tracy Anderson Mind and Body, LLC*

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................1

II.    STATEMENT OF JURISDICTION ....................................3

III.   STATEMENT OF THE ISSUE ..........................................3

IV.   STATUTORY AUTHORITIES ...........................................4

V.    STATEMENT OF THE CASE ............................................7

     A.     Overview .....................................................................7

     B.     The TA Method .........................................................7

     C.     The TA Works ...........................................................9

     D.     The District Court Proceedings ............................11

     E.     The District Court's Summary Judgment Decision ..........................12

VI.   SUMMARY OF ARGUMENT ...........................................15

VII.  STANDARD OF REVIEW ...............................................17

VIII. ARGUMENT .....................................................................18

     A.     The District Court Erred By Focusing On The TA Method Instead Of The Copyrightable Expression In The TA Works ..........18

             1.     TAMB's Claims Are Based On The Copyrightable Expression In The TA Works, Not On The TA Method ........18

             2.     The District Court Incorrectly Focused Its Analysis On The Underlying TA Method Instead Of The Copyrighted Expression In The TA Works ..........21

     B.     The District Court Also Erred By Failing To Apply The Correct Legal Standards For Analyzing Copyrightability ..........26

1.    The District Court Failed To Apply The Statutory Presumption Of Validity ........................................... 26

2.    The District Court's Two-Part Test For Protectable Choreography Is Unsupported By Law ................... 29

3.    The District Court Erred By Applying A *Per Se* Rule That Dance Routines Intended For "Exercise" Are Uncopyrightable ...................................................... 33

C.    Under The Correct Legal Standards, The Choreographed Dance Routines Depicted In The TA Works Are Copyrightable Expression ................................................................. 41

IX.    CONCLUSION ................................................................ 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Ent., Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) ...........................................................18

*Baker v. Selden*,
  101 U.S. 99 (1879)..................................................................36, 37

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
  803 F.3d 1032 (9th Cir. 2015) .................................................*passim*

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
  870 F.3d 978 (9th Cir. 2017) ...............................................17, 23, 24

*Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*,
  73 F.4th 1048 (9th Cir. 2023) .................................................28, 42

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ...................................................27

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)................................................................*passim*

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019)....................................................................42

*Hanagami v. Epic Games, Inc.*,
  85 F.4th 931 (9th Cir. 2023) ..................................................*passim*

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989) .....................................................27

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) .....................................................17

*Palmer v. Braun*,
  287 F.3d 1325 (11th Cir. 2002) ............................................13, 34, 35

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ...................................................17

*Publications Int'l, Ltd. v. Meredith Corp.*,
   88 F.3d 473 (7th Cir. 1996) ...............................................................37

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ...........................................................27

*Seltzer v. Sunbrock*,
   22 F. Supp. 621 (S.D. Cal. 1938)........................................................37

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
   580 U.S. 405 (2017)....................................................................*passim*

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
   630 F.3d 1255 (9th Cir. 2011) ......................................................27, 29

*United States v. City of Tacoma*,
   332 F.3d 574 (9th Cir. 2003) ..............................................................17

**Statutes**

17 U.S.C. § 101 ....................................................................37, 39, 43

17 U.S.C. § 102 ..............................................................................*passim*

17 U.S.C. § 102(a) ....................................................................18, 31, 42

17 U.S.C. § 102(a)(4)..................................................................18, 31

17 U.S.C. § 102(a)(5)..........................................................................39

17 U.S.C. § 102(a)(6)..........................................................................18

17 U.S.C. § 102(b) ........................................................13, 19, 21, 30

17 U.S.C. § 106 ....................................................................................3

17 U.S.C. § 410(a) ..................................................................28, 38, 42

17 U.S.C. § 410(c) ..........................................................10, 27, 28, 42

17 U.S.C. § 411(a) ..............................................................................41

17 U.S.C. § 501 ....................................................................................3

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 1331 ...................................................................................3

28 U.S.C. § 1338 ...................................................................................3

28 U.S.C. § 2107(a) ...............................................................................3

**Other Authorities**

37 C.F.R. § 201.2(b)(7) .........................................................................10

COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (2d ed. 1984) § 405.07(a) ..................11

COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (2d ed. 1984) § 450 ...........................19

COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (2d ed. 1984) § 450.03(a)-(c) ............10

COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (2d ed. 1984) § 450.07(a) ..................43

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 310.5 ........................40

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.1 ..............44, 47, 49

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.2 ........................44

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.2(A)-(F) ...........44, 47

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.4(A) ..................44

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.4(B) ..................40

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2014) § 805.4(B) ..................40

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.5(A) ...................................48

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.5(B) .................................48

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.5(B)(3)..............................44

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.8(A) .................................43

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 808.2(C) .................................43

Fed. R. App. P. 4(a)(1)(A) .........................................................................3

Subcommittee on Patents, Trademarks, and Copyrights of the Comm.
on the Judiciary, 86th Cong., 28 Copyright in Choreographic
Works (Comm. Print 1961) ................................................................43

## I.    INTRODUCTION

This appeal concerns the copyrightability of choreographed dance routines set to music, which are depicted in nineteen motion pictures registered for copyright in 2014. Plaintiff Tracy Anderson Mind & Body ("TAMB") is the owner of the registered copyrights in the nineteen works in this case. The deposit material for each copyright registration is a DVD.

The copyrighted works have been referred to as the "TA Works" (Tracy Anderson Works) throughout this litigation. The "TA Works" are distinct from the "TA Method" (Tracy Anderson Method). The TA Method is an underlying choreography protocol that Tracy Anderson, who was trained as a dancer, developed through years of research and knowledge. The TA Works are particular copyrighted works that express, relate to, or are based on the TA Method. The fact that there are nineteen TA Works in this case, each with different choreographic expression, and only one TA Method confirms that the two are not coextensive.

The district court erred, however, by conflating the TA Works with the TA Method in granting summary judgment against TAMB on its copyright claims. The district court found that the TA Method was an unprotectable idea and, on that basis, concluded that TAMB's claims were based on uncopyrightable subject matter. But the relevant inquiry is whether the TA *Works* are protected by copyright. Due to its misplaced focus on the TA *Method*, the district court did not properly answer this

question. Under the Copyright Act and this Court's precedent, the correct answer is yes, the TA Works are original expression protected by copyright. At a minimum, there are genuine disputes of material fact that a jury must resolve. The district court's error on this point alone warrants reversal and remand.

The district court compounded this mistake with several other legal errors. For example, the district court did not apply the statutory presumption of copyright validity to which sixteen of the nineteen TA Works are entitled. This failure resulted in the improper placement of the burden on TAMB to establish validity from scratch, rather than properly tasking Defendants with the burden to overcome the presumption. The district court also devised a novel two-part test for copyrightability that is unsupported by statute or precedent. This test improperly defers consideration of whether there is protectable choreography until after a threshold determination on the idea/expression dichotomy. And in applying the first step of this test, the district court improperly applied a *per se* rule that dance routines are uncopyrightable if they are intended to be used for exercise. Such a rule cannot be squared with the Copyright Act, this Court's precedent, or Supreme Court precedent. This rule also would create an unworkable regime where exactly the same material could gain or lose copyright protection over time based on findings about subjective intended use.

The district court's final judgment therefore should be reversed with respect to TAMB's copyright claims, and the case should be remanded for further proceedings.

## II. STATEMENT OF JURISDICTION

The underlying lawsuit asserted claims for copyright infringement under 17 U.S.C. §§ 106 and 501, in addition to other federal and state-law claims. 2-ER-254–278. The United States District Court for the Central District of California had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

The district court entered a final judgment that resolved the entire action. 1-ER-2–4. This Court has jurisdiction over TAMB's appeal from the final judgment under 28 U.S.C. § 1291.

The district court entered its final judgment on October 17, 2024. 1-ER-2–4. TAMB filed a notice of appeal from the final judgment on November 13, 2024. 2-ER-279–282. TAMB's appeal is therefore timely under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4(a)(1)(A).

## III. STATEMENT OF THE ISSUE

Where TAMB asserted copyright infringement claims based on the choreographed dance routines in the TA *Works*, did the district court err in granting summary judgment of no copyright infringement based on its finding that the TA *Method* is uncopyrightable?

## IV.   STATUTORY AUTHORITIES

### 17 U.S.C. § 101 – Definitions

Except as otherwise provided in this title, as used in this title, the following terms and their variant forms mean the following:

. . .

A work is "fixed" in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of sounds, images, or both, that are being transmitted, is "fixed" for purposes of this title if a fixation of the work is being made simultaneously with its transmission.

. . .

"Motion pictures" are audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any.

. . .

### 17 U.S.C. § 102 – Subject matter of copyright: In general

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise

- 4 -

communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

(1) literary works;

(2) musical works, including any accompanying words;

(3) dramatic works, including any accompanying music;

(4) pantomimes and choreographic works;

(5) pictorial, graphic, and sculptural works;

(6) motion pictures and other audiovisual works;

(7) sound recordings; and

(8) architectural works.

(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

### 17 U.S.C. § 410 – Registration of claim and issuance of certificate

(a) When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office. The certificate shall

contain the information given in the application, together with the number and effective date of the registration.

(b) In any case in which the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration and shall notify the applicant in writing of the reasons for such refusal.

(c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

(d) The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office.

## V.    STATEMENT OF THE CASE

### A.    Overview

Tracy Anderson ("Anderson") is a pioneer of the choreography-based fitness movement and the founder and CEO of TAMB. 2-ER-28. TAMB offers, among other things, choreography-based fitness classes at state-of-the-art studios around the world. 2-ER-255.

TAMB is the owner of registered copyrights to various media, including DVDs created by and featuring Anderson, that express, relate to, or are based on the TA Method. 2-ER-255. The nineteen copyrighted works at issue in this case have been referred to throughout the litigation as the TA Works. *See, e.g.*, 2-ER-107; 2-ER-121; 2-ER-179; 2-ER-268. As explained throughout this brief, the TA Works and TA Method are not interchangeable terms. The TA Works are copyrighted motion pictures that show particular choreographed dance routines. 2-ER-106–118; 2-ER-268. The TA Method, by contrast, is an underlying protocol that can be expressed in various ways—including through the choreographed routines shown in the TA Works. 2-ER-37–38; 2-ER-172; 2-ER-255; 2-ER-259.

### B.    The TA Method

In 2001, after five years of research, testing, and refinement, Anderson developed a novel methodology—the TA Method—that allows her to combine the artistic aspects of dance and the health benefits of dance training. 2-ER-138–139; 2-ER-35; 2-ER-55. At its core, the TA Method is a groundbreaking choreography

protocol that uniquely combines choreography and fitness to help people become more empowered, creative, and better versions of themselves. 2-ER-31; 2-ER-37–38; 2-ER-97; 2-ER-172; 2-ER-255; 2-ER-259. Anderson's objectives extend well beyond exercise and fitness; her work provides an unconventional and creative approach to bettering and balancing people's lives through artistic expression. 2-ER-31–36.

After developing the TA Method, Anderson founded TAMB. 2-ER-260. TAMB is the parent company to various studio entities, including Plaintiff T.A. Studio New York LLC ("TANY"). 2-ER-255. TANY employs numerous trainers to perform Anderson's choreography in group and private sessions for clients in both brick-and-mortar studios and online classes. 2-ER-255; 2-ER-260. These trainers "have specialized dance and/or choreography training, and many of them have held positions as professional dancers in the past or simultaneously while working for TAMB." 2-ER-118.

As explained in greater detail below, Anderson expresses the TA Method through the choreography she creates. Anderson combines selections and arrangements of dance steps and other movements that are informed by the underlying TA Method into coherent choreographic works. 2-ER-106–118; 2-ER-29–30; 2-ER-32–33. Anderson's choreography is carefully synchronized to a selection of music and features an arrangement of movements informed by the TA

Method, classic dance steps from ballet, hip-hop, jazz, and modern dance, modifications to those classic dance steps, and other audiovisual elements. 2-ER-106–118. In addition to incorporating these dance steps and rhythmically setting the arrangements to musical tempo, the TA Works include movements that utilize different body parts and positions, creative choice with body shapes and transitions, and variations in movement, speed, and tension. 2-ER-106–118.

## C.   The TA Works

From 2008 to 2014, TAMB produced and published the TA Works. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209. The TA Works are nineteen original motion pictures that contain a selection of choreographed movements that are synchronized to music and feature a variety of different dance steps and other audiovisual elements commonly present in many choreographic works. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209; 2-ER-106–118. In October 2014, TAMB filed applications for copyright registrations with the U.S. Copyright Office for each of the nineteen TA Works. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209.

The Copyright Office registered the TA Works effective as of October 31, 2014. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209. Sixteen of the TA Works were registered within five years of the date of publication. 2-ER-184; 2-ER-187–188; 2-ER-190–200; 2-ER-202–205. Those registrations constitute prima facie

evidence of the validity of those copyrights and the facts stated in the corresponding registration certificates. 17 U.S.C. § 410(c).

In examining applications for copyright registration, the U.S. Copyright Office refers to an administrative manual called The Compendium of Copyright Office Practices (the "Compendium"). The Copyright Office uses this manual as a guide to its institutional procedures and related principles of law for agency staff, copyright applicants, practitioners, scholars, the courts, and members of the public. *See* COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021); 37 C.F.R. § 201.2(b)(7). The operative version of the Compendium at the time of the filing of the copyright applications for the TA Works in October 2014 was the second edition of the Compendium ("Compendium II"). Compendium II states that choreography is a "specific category in which copyright subsists" with choreography being defined as "a related series of dance movements and patterns organized into a coherent whole . . . primarily executed by torso, limbs, or both, in rhythm." COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 450.03(a)-(c) (2d ed. 1984).

A physical deposit copy of each corresponding DVD was submitted with the copyright applications for the TA Works. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209. Each of the copyright registrations for the TA Works claims protection for the "entire motion picture" in line with the relevant guidance set forth in

Compendium II. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209; COMPENDIUM II (1984) § 405.07(a) ("A choreographic work may be embodied in motion-picture form. If such a motion picture constitutes the deposit for registration, the registration extends only to what is disclosed therein."). Accordingly, TAMB has presumptively valid copyrights in the "entire motion pictures" that constitute the TA Works, including the choreography contained in the TA Works.

Bubi & Babe Exercise, Inc. ("B&B") assigned the copyrights in the TA Works originally owned by B&B to TAMB via a Contribution and Exchange Agreement on June 1, 2011. 3-ER-300–305. Tracy Anderson Private Training, LLC ("TAPT") and TAMB executed a confirmatory assignment agreement on May 14, 2024, memorializing the parties' intent that TAMB be the lawful owner of the copyrights in the TA Works originally owned by TAPT. 2-ER-93–95.

### D.    The District Court Proceedings

TAMB and TANY filed this lawsuit against Defendants Megan Roup and The Sculpt Society, LLC in July 2022. 2-ER-286. TAMB and TANY filed the lawsuit after discovering that Roup, whom TANY had employed as a trainer for over six years, was publishing videos that infringe TAMB's copyrights in the TA Works. 2-ER-268–270. Defendants published the videos behind a paywall on their TSS app and website. 2-ER-268–270. Defendants' videos infringed TAMB's copyrights by copying choreography movements, sequences, and routines depicted in the TA

Works; the organizational structure and format of the TA Works; and aesthetic elements depicted in the TA Works. 2-ER-268. Plaintiffs filed the First Amended Complaint, which is the operative complaint, in September 2022. 2-ER-286.

The original and amended complaints included claims for copyright infringement, breach of contract, violation of the Lanham Act, and unfair competition. 2-ER-270–274. The copyright claims were asserted by TAMB against both Defendants. 2-ER-268–271. TAMB's copyright claims are the only claims relevant to this appeal. The First Amended Complaint makes clear that the copyright claims are based on the copyrighted TA Works, not the underlying TA Method. 2-ER-268–271.

Along the way, the district court (1) denied Defendants' motion to dismiss the copyright and breach of contract claims, (2) dismissed the Lanham Act and unfair competition claims (first with leave to amend and then with prejudice), (3) granted Defendants' special motion to strike the unfair competition claim, and (4) denied Roup's belated motion to assert counterclaims. 2-ER-227–253; 2-ER-287–292. After discovery, Defendants moved for summary judgment on the copyright and breach of contract claims. 2-ER-292.

### E.    The District Court's Summary Judgment Decision

The district court granted summary judgment against TAMB on its copyright claims. The district court required TAMB to meet a two-part test: "A plaintiff must

- 12 -

(1) first establish that the work is a copyrightable expression—as opposed to an idea, process, or system to which copyright protection may '[i]n no case' extend, 17 U.S.C. § 102(b)—and then (2) if the work is copyrightable, show that the dance rises to the level of protectable 'choreography' under the Copyright Act." 1-ER-9–10 (alteration in original). The district court stated that its test was a product of *Bikram's Yoga* and *Hanagami* "[t]aken together" and quoted the following excerpt from *Bikram's Yoga* as support: "'Because the Sequence is an unprotectable idea, it is also ineligible for copyright protection as a "compilation" or "choreographic work."'" 1-ER-10 (quoting *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1036 (9th Cir. 2015)). The district court also characterized *Bikram's Yoga* as supporting the following proposition: "Courts have found that '"exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright."'" 1-ER-10 (quoting *Bikram's Yoga*, 803 F.3d at 1038 (in turn quoting *Palmer v. Braun*, 287 F.3d 1325, 1334 (11th Cir. 2002))).

Applying only the first step of its two-part test, the district court went on to "find[] that Anderson's routines are clearly an unprotectable process, system, and/or methodology." 1-ER-10. The district court found that "the undisputed evidence, here, establishes that Anderson's routines are fundamentally a system or method of exercise." 1-ER-10.

- 13 -

In explaining this finding, the district court focused almost exclusively on the TA *Method*, 1-ER-10–11, and only once mentioned the TA *Works*, 1-ER-10 ("The descriptions and marketing of the TA Works DVDs list the physical benefits they seek to confer on the purchaser."). For example, the district court stated:

- "The TA Method was the result of years of scientific research, testing, and development."

- "[T]he TA Method is marketed as a 'research and result-proven fitness methodology' and 'fitness program designed for strategic muscle design.'"

- "All of these undisputed facts prove that the TA Method is in fact a method or system that was designed for the purpose of improving client's fitness and health."

- "Plaintiffs do not dispute that the TA Method confers health benefits, tones muscles, improves cardiovascular health, or otherwise constitutes exercise."

- "[Plaintiffs] still must provide evidence to meet the first step of the analysis—that the TA Method is copyrightable—before assessing whether it is protected choreography."

- "Even if there is choreography, if the TA Method is a method, process, or system, it cannot be copyrightable."

- "[N]o reasonable juror could find that the TA Method is not a method, process, or system unprotected by § 102."

- "[B]ecause the TA Method is uncopyrightable, the Court need not reach the issues of whether the TA Method could be considered choreography and if TAMB actually owns the copyrights."

1-ER-10–11. While the district court found that "the TA *Method* is uncopyrightable," it did not expressly rule that the TA *Works* are uncopyrightable. 1-ER-11 (emphasis added).

In the same order, the district court denied Defendants' motion for summary judgment on the breach of contract claim. 1-ER-11–13. The parties then resolved the breach of contract claim and stipulated to a final judgment subject to TAMB's right to appeal the judgment with respect to the copyright claims. 1-ER-2–4.

## VI.   SUMMARY OF ARGUMENT

The district court erred as a matter of law in granting summary judgment against TAMB on its copyright claims. TAMB's copyright claims are based on the copyrighted TA Works, and those works constitute protectable expression as a matter of law. At a minimum, there are genuine disputes of material fact that preclude summary judgment. Either way, the judgment should be reversed as to the copyright claims.

Most fundamentally, the district court erred by basing its decision on its analysis of the TA *Method* and not on a proper analysis of the TA *Works*. The TA Works are the copyrighted works at issue. The TA Works are motion pictures that depict various choreographed sequences of dance movements that express, relate to, or are based on the underlying TA Method. But the TA Method itself is neither copyrighted nor asserted as the basis of TAMB's copyright claims. The district court therefore erred by rejecting the copyright claims on the ground that the TA Method is uncopyrightable.

This error alone warrants reversal. But the district court committed several additional legal errors that also should be corrected on appeal. First, the district court did not apply the presumption of copyright validity to which sixteen of the nineteen TA Works are entitled. As a result, Defendants were spared their burden of overcoming the presumption, and TAMB was improperly given the initial burden instead. Second, the district court also applied a two-part test for establishing copyrightability that neither the Copyright Act nor precedent supports. This test resulted in the district court's rejection of TAMB's copyright claims without considering whether those claims are based on protectable choreography as defined by this Court's precedent. Third, the district court improperly applied a *per se* rule that dance routines are uncopyrightable if they are intended to be used for exercise.

The district court's subjective-intent-based rule is inconsistent with the Copyright Act and precedent and should be rejected here.

Once these errors are corrected, a proper analysis of the TA Works under the Copyright Act and controlling precedent leads to the conclusion that the TA Works and the choreography contained in them are protected expression. The district court's final judgment with respect to TAMB's copyright claims therefore should be reversed, and the case should be remanded for further proceedings.

## VII. STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment. *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 982 (9th Cir. 2017). In doing so, this Court "'view[s] the evidence in the light most favorable to the nonmoving party'" and decides "'whether there are any genuine issues of material fact and whether the district court correctly applied substantive law.'" *Id.* (quoting *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003)).

"The district court's interpretations of the Copyright Act are also reviewed de novo." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007). The district court's determination about the scope of copyright protection is likewise reviewed de novo. *See Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019). Whether a given work is protected by copyright laws is a mixed

question of law and fact reviewed de novo. *See ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 413 (9th Cir. 2018).

## VIII. ARGUMENT

### A. The District Court Erred By Focusing On The TA Method Instead Of The Copyrightable Expression In The TA Works

TAMB's copyright infringement claims are based on the choreographic expression contained in the TA Works. These claims are not based on the underlying TA Method. The district court erred by analyzing the latter, not the former, in rejecting TAMB's copyright claims. The misplaced focus of the district court's analysis is a threshold legal error that warrants reversal and remand.

#### 1. TAMB's Claims Are Based On The Copyrightable Expression In The TA Works, Not On The TA Method

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Only "original works of authorship fixed in any tangible medium of expression" are eligible for copyright protection. 17 U.S.C. § 102(a). "Works of authorship" include, among other things, "choreographic works" and "motion pictures." 17 U.S.C. § 102(a)(4) & (6). But "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in

which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

"Copyright protection thus only covers an artist's expression, not the idea underlying that expression." *Feist*, 499 U.S. at 349. Accordingly, whether § 102(b) bars a claim for copyright infringement turns on the precise basis of the claim: is it based on protected expression in the copyrighted work or on uncopyrightable subject matter enumerated in the statute?

Here, TAMB's copyright infringement claims are based on the nineteen copyrighted TA Works. 2-ER-268–271. In particular, TAMB's copyright infringement claims are based on the choreographic expression embodied in the TA Works. 2-ER-268–271. The TA Works are motion picture DVDs for which TAMB owns registered motion picture copyrights. 2-ER-268; 2-ER-277–278; 2-ER-184–200; 2-ER-202–205; 2-ER-207–209. As explained further in Section VIII.C below, these registered copyrights extend to the choreography movements, sequences, and routines depicted in the motion pictures under the U.S. Copyright Office's applicable Compendium of U.S. Copyright Office Practices. COMPENDIUM II (1984) § 450.

The First Amended Complaint alleges that "[t]he TA Works depict Anderson performing a compilation of choreographed movements and sequences she designed and curated." 2-ER-268. The complaint also alleges that "[h]er performances are done in a studio and set to music she specifically selected." 2-ER-268. Defendants

lodged limited video excerpts of the TA Works with their summary judgment motion in the district court. 2-ER-120–123. (TAMB will file, shortly after this brief, a motion to transmit those physical exhibits to this Court.)

The First Amended Complaint further alleges that "Defendants' videos infringe TAMB's copyrights by copying the choreography movements, sequences, and routines depicted in the TA Works; organizational structure and format of the TA Works; and aesthetic elements depicted in the TA Works." 2-ER-268. The complaint then identifies, as examples of the alleged infringement, several of Defendants' videos where individuals "perform choreography movements, sequences, and routines that are substantially similar to those depicted" in specified portions of certain TA Works. 2-ER-268–269. The complaint consistently focuses on the performance of "choreography movements, sequences, and routines that are substantially similar to those depicted in the TA Works" as the basis of TAMB's copyright claims. 2-ER-269–270.

TAMB's copyright claims are not based on the underlying TA Method. *See* 2-ER-268–271. Rather, the First Amended Complaint explains that each of the TA Works "expresses, relates to, or is based on the TA Method." 2-ER-268. That is the only reference to the "TA Method" in the copyright infringement sections of the First Amended Complaint. 2-ER-268–271. By contrast, the same sections of the First Amended Complaint expressly refer to the "TA Works" fourteen times. 2-ER-268–

- 20 -

271. The First Amended Complaint elsewhere alleges that "the TA Method" is "a choreography *protocol* made up of custom and specific movements, sequences, and routines that uniquely combines choreography, fitness, and cardiovascular movement to help people create balance in their bodies so they can improve their lives by further connecting to their primal right to move through specifically tailored choreography that took a significant amount of study to develop." 2-ER-259 (emphasis added).

The district court's summary judgment opinion appeared to start out on the right foot by identifying "'the choreography, movements, sequences, and routines from the TA Works'" as the focus of TAMB's copyright claims. 1-ER-8 (citing 2-ER-270–271). But as explained in Section VIII.A.2 below, the district court later diverged from the "TA Works" and veered into an analysis of "the TA Method." This departure was not a mere semantic difference, but rather produced a substantively erroneous conclusion on the viability of TAMB's copyright claims.

### 2. The District Court Incorrectly Focused Its Analysis On The Underlying TA Method Instead Of The Copyrighted Expression In The TA Works

The district court's conflation of the TA Method and the TA Works resulted in its erroneous finding that TAMB's "routines" are ineligible for copyright protection because they are "clearly an unprotectable process, system, and/or methodology" under 17 U.S.C. § 102(b). In explaining this finding, the district court

focused almost exclusively on the TA Method, 1-ER-10–11, and only once mentioned the TA Works, 1-ER-10 ("The descriptions and marketing of the TA Works DVDs list the physical benefits they seek to confer on the purchaser."). For example, the district court stated:

- "The TA *Method* was the result of years of scientific research, testing, and development."

- "[T]he TA *Method* is marketed as a 'research and result-proven fitness methodology' and 'fitness program designed for strategic muscle design.'"

- "All of these undisputed facts prove that the TA *Method* is in fact a method or system that was designed for the purpose of improving client's fitness and health."

- "Plaintiffs do not dispute that the TA *Method* confers health benefits, tones muscles, improves cardiovascular health, or otherwise constitutes exercise."

- "[Plaintiffs] still must provide evidence to meet the first step of the analysis—that the TA *Method* is copyrightable—before assessing whether it is protected choreography."

- "Even if there is choreography, if the TA *Method* is a method, process, or system, it cannot be copyrightable."

- 22 -

- "[N]o reasonable juror could find that the TA *Method* is not a method, process, or system unprotected by § 102."

- "[B]ecause the TA *Method* is uncopyrightable, the Court need not reach the issues of whether the TA *Method* could be considered choreography and if TAMB actually owns the copyrights."

1-ER-10–11 (emphasis added). The district court thus found that "the TA *Method* is uncopyrightable" without specifically analyzing whether the particular expression in each individual TA *Work* is subject to copyright protection. 1-ER-11 (emphasis added).

The district court's misplaced focus on the TA Method improperly short-circuited the required inquiry into whether TAMB's copyright claims are based on protected expression in the TA Works. *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940-41 (9th Cir. 2023) (explaining that copyright infringement claim requires proof that the defendant "copied *protected* aspects of [the plaintiff's] *work*" (citing *Feist*, 499 U.S. at 361) (emphasis added)). The district court's finding that the TA Method is an uncopyrightable method, process, or system did not answer the questions whether the TA Works contained protected choreographic expression and whether TAMB's copyright claims are based on that protected expression. The summary judgment ruling is thus based on a misapplication of substantive law and cannot stand. *See DRK Photo*, 870 F.3d at 982.

- 23 -

The district court's incorrect focus on the "TA Method" also produced its inapt analogy of this case to the facts of *Bikram's Yoga*. In *Bikram's Yoga*, this Court "decide[d] whether a sequence of twenty-six yoga poses and two breathing exercises developed by Bikram Choudhury and described in his 1979 book, *Bikram's Beginning Yoga Class*, is entitled to copyright protection." *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1034 (9th Cir. 2015). In affirming the district court's grant of summary judgment, this Court stated that "the Sequence is an idea, process, or system designed to improve health." *Id.* at 1036. This Court then explained that "[c]opyright protects only the expression of this idea—the words and pictures used to describe the Sequence—and not the idea of the Sequence itself." *Id.* The Court further concluded that "[b]ecause the Sequence is an unprotectable idea, it is also ineligible for copyright protection as a 'compilation' or 'choreographic work.'" *Id.*

Here, the district court likened the TA Method to the Sequence in *Bikram's Yoga*. 1-ER-9–11. After finding that "the TA Method is in fact a method or system that was designed for the purpose of improving client's fitness and health," the Court stated that "[t]he TA method is nearly identical in this way to the Sequence in *Bikram*." 1-ER-10. But regardless of how and how much the TA Method may or may not be like the Sequence, the comparison is irrelevant because TAMB's copyright claims do not seek to protect the TA Method itself. Rather, as explained

- 24 -

above, TAMB's copyright claims seek to protect the particular choreographic expression depicted in the nineteen TA Works.

This Court's reasoning in *Bikram's Yoga* further confirms the inaptness of the district court's analogy. This Court emphasized that the copyrighted book simply "explain[s]" and "describe[s]" a method (*i.e.*, the Sequence). *Bikram's Yoga*, 803 F.3d at 1040-41. Here, by contrast, the copyrighted TA Works are not mere explanations or descriptions of the TA Method. Rather, the TA Works depict a variety of specific choreographed dance routines that express, relate to, or are based on the TA Method. Just as the uncopyrightability of ballet as a system of dance does not mean *The Nutcracker* is uncopyrightable, the district court's conclusion that the TA Method is uncopyrightable does not deprive the TA Works' particular choreographed dance routines of copyright protection. This significant distinction between the TA Method and the copyrighted TA Works in this case did not exist between the Sequence and the copyrighted book describing the Sequence in *Bikram's Yoga*. This is another reason why *Bikram's Yoga* does not support the summary judgment ruling here.

In sum, TAMB's copyright claims are based on protected choreographic expression contained in the TA Works. But the district court did not analyze that expression in rejecting the copyright claims on summary judgment. Rather, the district court incorrectly focused on the TA Method. The district court's finding that

the TA Method is uncopyrightable thus does not answer the question of whether TAMB's copyright claims are based on copyrightable subject matter. The district court's error on this point alone warrants reversal and remand.

## B. The District Court Also Erred By Failing To Apply The Correct Legal Standards For Analyzing Copyrightability

Even if the district court had otherwise applied the correct legal standards to its analysis of the TA Method, reversal would be warranted because the district court analyzed the wrong thing. However, the district court also failed to apply the correct legal standards for analyzing copyrightability in several important respects. In particular, the district court failed to apply the presumption of validity, fashioned an incorrect two-part test for analyzing claims of protectable choreography, and applied an improper *per se* rule that dance routines intended as exercise are uncopyrightable. These errors also should be corrected on appeal.

### 1. The District Court Failed To Apply The Statutory Presumption Of Validity

TAMB's registered copyrights in sixteen of the nineteen TA Works are presumptively valid, and it was Defendants' burden to overcome that presumption. Yet the district court erred by giving no weight to the statutory presumption of validity to which those works were entitled. This legal error is another ground for reversal.

Section 410(c) of the Copyright Act states that "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989). "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

When the statutory presumption applies, the defendant "has the burden of rebutting the facts set forth in the copyright certificate." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011). Rebutting the presumption of validity requires a defendant to "simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Id.* (citations and quotations omitted). But until the defendant does so, the plaintiff "d[oes] not have to produce any evidence" bearing on validity. *Id.* at 1258. The presumption of validity extends to the Copyright Office's determination that the copyrighted subject matter is copyrightable. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) ("[T]o overcome the presumption of validity, defendants must demonstrate why the photographs are not copyrightable."); *see also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989) (explaining that the presumption "shifts the

burden of proof to the defendants to demonstrate why plaintiff's organizers are not copyrightable").

Here, the presumption of validity applies to the copyrights in the sixteen TA Works that were registered within five years of their publication. 17 U.S.C. § 410(c); 2-ER-184–200; 2-ER-202–205; 2-ER-207–209. Moreover, the presumption of a valid copyright extends to all the copyrightable subject matter contained in those works. *See Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc*., 73 F.4th 1048, 1056–57 (9th Cir. 2023) (holding that a copyright "registration applies to all 'the material deposited [that] constitutes copyrightable subject matter'") (quoting 17 U.S.C. § 410(a)). As explained in greater detail in Section VIII.C below, this material includes the choreography movements, sequences, and routines depicted in the TA Works. But the district court did not acknowledge or apply the presumption of validity in its copyrightability analysis. 1-ER-9–11. The district court's only mention of a presumption was in its summary of TAMB's arguments. 1-ER-8 ("Plaintiffs respond that . . . TAMB enjoys a presumption of ownership of the copyrights."). Nor did the district court address whether it should exercise its discretion to give weight to the certificates of registration for the three TA Works that were registered more than five years after their first publication. 1-ER-9–11. The district court even denied Defendants' motion for judicial notice of two of the copyright registration certificates on the ground that its ruling on copyrightability

meant it did not need to address ownership. 1-ER-6 n.3; 1-ER-9–11; 2-ER-125–127; 2-ER-202–205.

The district court's legal error in failing to apply the presumption of validity was not just theoretical. Rather, the district court expressly imposed on TAMB the burden to establish copyrightability without any regard for Defendants' initial burden to overcome the presumption. *See* 1-ER-9–10 ("A plaintiff must (1) first establish that the work is a copyrightable expression . . . and then (2) if the work is copyrightable, show that the dance rises to the level of protectable 'choreography' under the Copyright Act."); *see also* 1-ER-9–11 ("Yet Plaintiffs provide no evidence that anyone perceives or understands the TA Method to be a performance art or anything other than an exercise routine."). Under the correct legal standard, Defendants had the initial burden to overcome the presumption before any burden was placed on TAMB. *See United Fabrics*, 630 F.3d at 1257-58. The district court's failure to apply the correct legal standard is another basis for reversal.

### 2. The District Court's Two-Part Test For Protectable Choreography Is Unsupported By Law

The district court also erred in applying a novel test that artificially separated the question of whether material constitutes protectable choreography from whether it constitutes copyrightable expression. The district court's test was: "[a] plaintiff must (1) first establish that the work is a copyrightable expression—as opposed to an idea, process, or system to which copyright protection may '[i]n no case' extend,

17 U.S.C § 102(b)—and then (2) if the work is copyrightable, show that the dance rises to the level of protectable 'choreography' under the Copyright Act." 1-ER-9–10. The district court stated that this test was the net result of this Court's decisions in *Bikram's Yoga* and *Hanagami*. 1-ER-9–10. But those precedents do not support the district court's framework.

*Bikram's Yoga* does not support the district court's imposition of a threshold "copyrightable expression" requirement before it could consider whether a work constitutes protectable choreography. Instead, this Court in *Bikram's Yoga* analyzed whether the yoga sequence constituted protectable choreography as part of its overall inquiry into whether the claims in that case were based on copyrightable expression. 803 F.3d at 1043-44. The Court ultimately concluded that the yoga sequence did not constitute protectable choreography *because* it was an unprotectable idea. *Id.* at 1044. In doing so, the Court explained that "[t]he idea/expression dichotomy, codified in Section 102(b), plays a similar role in defining the scope of protection for a 'choreographic work' as it does for compilations." *Id.* (citing *Feist*, 499 U.S. at 350-51). The idea/expression dichotomy therefore was a tool that the Court used in its analysis of whether the yoga sequence was protectable choreography. It was not, as the district court would have it, a threshold test that must be passed before a court can even consider whether a work meets the definition of protectable choreography.

Moreover, under the Copyright Act, protectable choreography *is* copyrightable expression. 17 U.S.C. § 102(a)(4). Meeting the second step of the district court's test, therefore, necessarily would satisfy the first step. But under the district court's approach, one cannot even reach the second step of the test without satisfying the first. The district court therefore improperly excluded any consideration of whether the dance routines depicted in the TA Works are protectable choreography from its analysis of whether TAMB's copyright claims are based on copyrightable subject matter. *See* 1-ER-11 ("And because the TA Method is uncopyrightable, the Court need not reach the issues of whether the TA Method could be considered choreography and if TAMB actually owns the copyrights.").

Similarly, because the Copyright Act does not generically define copyrightable expression, but rather "defines copyrightable subject matter" in relation to the specific categories of "works of authorship" listed in § 102(a), step one of the district court's test cannot be implemented without considering whether the dance routines depicted in the TA Works are protectable choreography. *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017); *see also Feist*, 499 U.S. at 356-61 (1991) (explaining that a compilation, to be copyrightable, must select, coordinate, or arrange material, facts, or data in a manner that qualifies as an "'original' work of authorship" under § 102(a)).

*Hanagami* does not support the district court's test either. The ultimate issue in *Hanagami* was whether the plaintiff had plausibly alleged substantial similarity between his copyrighted choreographic work and the allegedly infringing work. 85 F.4th at 935-36. In concluding that the plaintiff had plausibly alleged substantial similarity, this Court reviewed the district court's application of the "extrinsic test" as "the primary issue on appeal." *Id.* at 941-45. The extrinsic test, the Court explained, "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.* at 941 (citations and quotations omitted). In applying the extrinsic test, "courts must first distinguish between protectable and unprotectable elements." *Id.* at 942. The Court's analysis of what was protectable in *Hanagami* is thus relevant to the copyrightability issue here even though Defendants did not challenge substantial similarity in their summary judgment motion, *see* 1-ER-8 ("Defendants do not dispute the similarity between Anderson's and Roup's dance routines, . . . .").

This Court in *Hanagami* held that "[c]horeography is, by definition, a related series of dance movements and patterns organized into a coherent whole." 85 F.4th at 944. The Court added that "[t]he relationship between those movements and patterns, and the choreographer's creative approach of composing and arranging them together, is what defines the work." *Id.* After faulting the district court for "fail[ing] to assess the discrete combination of elements of the Registered

Choreography," this Court concluded that the plaintiff had "plausibly alleged that the creative choices he made in selecting and arranging elements of the choreography—the movement of the limbs, movement of the hands and fingers, head and shoulder movement, and tempo—are substantially similar to the choices [the defendant] made in creating the [allegedly infringing] emote." *Id.* at 944-45.

Nowhere in *Hanagami* did this Court bifurcate consideration of the idea/expression dichotomy from the question of whether a given work contains protectable choreography. Rather, the Court applied its definition of choreography as part of its analysis of whether the plaintiff had plausibly alleged substantial similarity based only on the protectable elements of his expression, as opposed to unprotectable elements like ideas, methods, or processes. *Id.* at 941-45. The district court should have done the same thing here to assess whether there was a triable issue of fact on the copyrightability of the subject matter that forms the basis of TAMB's copyright claims (*i.e.*, the particular choreographed expression in the TA Works). The district court's failure to do so is another legal error that warrants reversal and remand.

### 3.    The District Court Erred By Applying A *Per Se* Rule That Dance Routines Intended For "Exercise" Are Uncopyrightable

Another legal error in the summary judgment ruling is the district court's reliance on the incorrect premise that dance routines intended for "exercise" are

- 33 -

uncopyrightable simply *because* they are intended for exercise. *See* 1-ER-10–11. In applying this intent-based *per se* rule, the district court relied heavily on its finding that the TA Method (which, again, was not the proper focus to begin with) is intended for health and fitness purposes. *See, e.g.*, 1-ER-10–11 (finding that "the TA Method is marketed as a . . . fitness program," "TAMB is a company operating in the wellness industry . . . revealing that its purpose is not art or expression, but health and fitness," and "the TA Method is in fact a method or system that was designed for the purpose of improving client's fitness and health"). The district court's approach is flawed for at least three reasons.

First, the district court's approach is based on a flawed reading of this Court's decision in *Bikram's Yoga*. The district court stated: "Courts have found that "'exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright.'"" 1-ER-10 (quoting *Bikram's Yoga*, 803 F.3d at 1038 (in turn quoting *Palmer*, 287 F.3d at 1334)). But the district court's quotation overlooks important context preceding the word "exercises." This context makes clear that the Court in *Bikram's Yoga* did not broadly pronounce that exercises cannot be protected by copyright.

Specifically, the paragraph of *Bikram's Yoga* from which the district court excerpted the quotation set forth the more general principle that "the copyright for a

- 34 -

work describing how to perform a process does not extend to the process itself." 803 F.3d at 1037-38. As an example of this principle in action, this Court pointed to the Eleventh Circuit's decision in *Palmer*, 287 F.3d 1325. This Court described *Palmer* as holding that "meditation exercises described in a copyrighted manual on exploring the consciousness were 'a process' unentitled to copyright protection." *Bikram's Yoga*, 803 F.3d at 1038 (citing *Palmer*, 287 F.3d at 1334). This Court then stated, in the sentence that the district court partially quoted in its opinion: "The court explained that the 'exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright.'" *Id.* (citing *Palmer*, 287 F.3d at 1334). This Court therefore was merely summarizing *Palmer*'s holding regarding the particular meditation exercises at issue in that case. The words "The court explained that the," which were omitted from the district court's excerpt of this sentence, are thus crucial to understanding what this Court was and was not stating in *Bikram's Yoga*. Contrary to the district court's opinion, this Court did *not* hold that "exercises"—full stop—cannot be copyrighted.

Second, *Bikram's Yoga* does not otherwise stand for the broad proposition that routines intended for "exercise" cannot be copyrighted. Nowhere in *Bikram's Yoga* did this Court hold that the intended use of a copyrighted work dictates its copyrightability or that an intent to confer fitness or wellness benefits disqualifies a

- 35 -

work from copyright protection. The Court instead explained that "[a]lthough there is no cause to dispute the many health, fitness, spiritual, and aesthetic benefits of yoga, and Bikram Yoga in particular, they do not bring the Sequence into the realm of copyright protection." *Id.* at 1044.

Concluding that the health and fitness benefits of Bikram Yoga do not *confer* copyright protection on the Sequence is not equivalent to a holding that such benefits categorically *preclude* copyright protection. This Court never made the latter holding. Rather, the Court's conclusion that "at bottom, the Sequence is an idea, process, or system designed to improve health," *id.* at 1036, flowed from its fact-specific analysis of the Sequence that the plaintiff was trying to protect through its copyright in a book that merely described the Sequence, *id.* at 1036-44. Far from adhering to *Bikram's Yoga*, the district court's failure to perform a fact-specific analysis of the choreographic expression in the TA Works—the very thing that TAMB seeks to protect in this case, not the underlying TA Method—contradicts this Court's precedent.

The ultimate disqualifying feature of the Sequence was not that it conferred or was intended to confer health benefits, but rather that it was merely "an idea, process, or system" designed to confer those benefits. *Id.* at 1040. This Court's discussion of other cases in *Bikram's Yoga* confirms this point. For example, this Court observed that the Supreme Court in *Baker v. Selden* held that "the

[copyrighted] book's expression of the *book-keeping system* was protected, but the system of book-keeping itself was not entitled to copyright protection." *Bikram's Yoga*, 803 F.3d at 1037 (citing *Baker v. Selden*, 101 U.S. 99, 102 (1879)) (emphasis added). This Court also cited a case where "the Seventh Circuit held that *recipes* contained in a copyrighted *cookbook* are not entitled to copyright protection, for they merely 'describe a procedure by which the reader may produce many dishes,' . . . ." *Id.* at 1038 (quoting *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 481 (7th Cir. 1996)) (emphasis added). This Court similarly discussed a district court ruling that "the copyright in a manual describing *how to organize roller-skating races* does not extend to the rules for the races themselves." *Id.* (citing *Seltzer v. Sunbrock*, 22 F. Supp. 621, 630 (S.D. Cal. 1938)) (emphasis added). The common thread among these cases was not that the subject matter in question was designed to confer a health benefit or any other particular benefit, but rather that (unlike here) the plaintiff was trying to use the copyrighted work to protect an underlying idea, process, or system. Here, TAMB is asserting protection for the particular choreographed sequences of dance movements fixed in the TA Works—not the underlying TA Method.

Third, the district court's intent-based *per se* rule is also inconsistent with the Copyright Act and the Supreme Court's decision in *Star Athletica*, 580 U.S. at 422-23. Nothing in the Copyright Act states or suggests that the intended use or benefits of a copyrighted work is material to its copyrightability. *See, e.g.*, 17 U.S.C. § 101

- 37 -

(includes definitions of certain types of copyrightable works); 17 U.S.C. § 102 (copyright protection extends to "original works of authorship fixed in any tangible medium of expression" but not to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"). In fact, § 410(a) of the Copyright Act states: "When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, *the material deposited* constitutes copyrightable subject matter . . . the Register shall register the claim." 17 U.S.C. § 410(a) (emphasis added). In this case, for example, "the material deposited" consists of the DVDs in which the "entire motion picture[s]" of the dance routines are fixed—not statements of subjective intent or materials marketing the dance routines for a particular purpose or touting a particular benefit. *See* 2-ER-184–200; 2-ER-202–205; 2-ER-207–209. The absence of subjective statutory criteria makes sense, for otherwise copyright protection could wax and wane depending on how the same choreographed dance routines are used and marketed over time (or even in different ways at the same time). *See* Brief for the United States as Amicus Curiae Supporting Respondents, pp. 36-38, *Star Athletica, LLC, v. Varsity Brands, Inc.*, 580 U.S. 405 (2017) (No. 15-866) (warning that consideration of material other than the deposit material, such as design process and marketability, in the copyrightability

determination "could lead to inconsistent treatment of identical works and would undermine the copyright-registration process").

Likewise, in the context of pictorial, graphic, and sculptural works under 17 U.S.C. § 102(a)(5) and the corresponding definition under 17 U.S.C. § 101, the Supreme Court has confirmed that extrinsic evidence of a work's marketability and a creator's "design methods, purposes, and reasons" are irrelevant to copyrightability determinations under this provision because they are not "grounded in the text of the statute." *Star Athletica*, 580 U.S. at 422-23. The Supreme Court held instead that "[t]he statute's text makes clear . . . that our inquiry is limited to how the article and feature are perceived, not how or why they were designed." *Id.* The statutory text at issue was this qualification in the Copyright Act's definition of "pictorial, graphic, and sculptural works": "the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101.

The same principle that copyrightability does not turn on intent or marketability applies equally to the analysis of copyrightability under 17 U.S.C. § 102. Like the portion of § 101 at issue in *Star Athletica*, § 102 identifies objective criteria and does not prescribe any subjective criteria for making copyrightability

determinations. Accordingly, "design methods, purposes, and reasons," *Star Athletica*, 580 U.S. at 422-23, should be treated as irrelevant in this context too.

The Copyright Office likewise has recognized the broader relevance of *Star Athletica*'s teaching to copyrightability determinations: "When examining a work for original authorship, the U.S. Copyright Office will not consider the author's inspiration for the work, creative intent, or intended meaning. Instead, the Office will focus solely on the appearance or sound of the work that has been submitted for registration to determine whether it is original and creative within the meaning of the statute and the relevant case law. Evaluating the author's inspiration or intent would require the Office 'to consider evidence of the creator's design methods, purposes, and reasons.' *Star Athletica,* 137 S. Ct. at 1015. The Supreme Court has made it clear that copyrightability should be based on how a work is perceived, not how or why it was designed. *See id.*" COMPENDIUM III (2021) § 310.5.

The Copyright Office also has explained that intent is not relevant to the determination of copyrightable choreographic authorship. *See* COMPENDIUM III (2021) § 805.4(B) ("The U.S. Copyright Office may register a choreographic work . . . The specialist will not consider subjective criteria that have no bearing on whether the originality requirement has been met, such as the author's intent, the aesthetic value, artistic merit, or intrinsic quality of the dance, or the symbolic meaning or commercial impression of the dance."); COMPENDIUM III: U.S.

- 40 -

COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 805.4(B) (3d ed. 2014) (same).

Accordingly, if the particular dance routines in the individual TA Works otherwise qualify for copyright protection under § 102 of the Copyright Act, this protection cannot be withdrawn based on any "health and fitness" purposes behind the TA Works or how those works are marketed. The district court's contrary approach should be rejected.

### C.   Under The Correct Legal Standards, The Choreographed Dance Routines Depicted In The TA Works Are Copyrightable Expression

When the correct legal standards are applied to the actual basis of TAMB's copyright claims—either by this Court on appeal or the district court on remand—the right conclusion is that the choreographed dance routines depicted in the TA Works are copyrightable. At a minimum, Defendants failed to meet their summary judgment burden of showing there are no material disputed facts for trial.

TAMB's copyright infringement claims are based on the specific dance routines depicted in the nineteen copyrighted TA Works and Defendants' use of substantially similar dance routines in competing videos. 2-ER-268–271. Each TA Work has an effective date of copyright registration of October 31, 2014, and thus was registered before Plaintiffs filed this lawsuit in 2022. 2-ER-184–200; 2-ER-202–205; 2-ER-207–209; *see* 17 U.S.C. § 411(a) ("[N]o civil action for infringement

- 41 -

of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); *see also Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 308-09 (2019).

Sixteen of the nineteen TA Works enjoy the statutory presumption of valid copyrights because they were registered within five years of publication. *See* 2-ER-184; 2-ER-187–188; 2-ER-190–200; 2-ER-202–205; 17 U.S.C. § 410(c). While the copyrights for the other three TA Works are not statutorily entitled to this presumption because they were registered more than five years after first publication, the district court has discretion to give the registration certificates evidentiary weight. *See* 2-ER-185–186; 2-ER-189; 17 U.S.C. § 410(c).

Moreover, the registered copyrights in the TA Works extend to the choreographed dance routines depicted in those works. *See Enter. Mgmt.*, 73 F.4th at 1056-57 (holding that a copyright "registration applies to all 'the material deposited [that] constitutes copyrightable subject matter'") (quoting 17 U.S.C. § 410(a)). The dance routines depicted in the TA Works are "fixed" for purposes of copyright in the DVDs submitted to the Copyright Office in connection with obtaining the copyright registrations for each of the TA Works. *See* 2-ER-184–200; 2-ER-202–205; 2-ER-207–209; 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression.");

17 U.S.C. §101 ("A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."). The Copyright Office recognizes (and has recognized since before the formal inclusion of choreography in the 1976 Copyright Act) that choreography can be fixed and registered in motion picture formats. *See* SUBCOMMITTEE ON PATENTS, TRADEMARKS, AND COPYRIGHTS OF THE COMM. ON THE JUDICIARY, 86TH CONG., 28 COPYRIGHT IN CHOREOGRAPHIC WORKS, at 97 (Comm. Print 1961) ("A motion picture of a dance shows the dance fully in a fixed 'written' form from which it could be reproduced in a performance on the stage or for another motion picture. Motion pictures may, in fact, be used as the medium of recording the dance movements in a fixed form, and an original dramatic dance so fixed would appear to qualify for copyright protection as a work of choreography."); COMPENDIUM II (1984) § 450.07(a) ("A choreographic work may be embodied in motion-picture form. If such a motion picture constitutes the deposit for registration, the registration extends only to what is disclosed therein."); COMPENDIUM III (2021) § 805.8(A) ("The choreography in a . . . motion picture may be registered as a choreographic work."); COMPENDIUM III (2021) § 808.2(C) ("[T]he motion picture is simply the medium used to 'fix' the underlying work.").

Next, the dance routines depicted in the TA Works meet this Court's definition of choreography. In *Hanagami*, the Court defined choreography as "'the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole.'" *Hanagami*, 85 F.4th at 940 (quoting COMPENDIUM III (2021) § 805.1). The Court then defined dance as "the 'static and kinetic succession[ ] of bodily movement in certain rhythmic and spatial relationships.'" *Id.* (quoting COMPENDIUM III (2021) § 805.4(A) (alteration in original)). The Court also noted that "[u]nder these definitions, 'choreography is a subset of dance,' but the two terms are 'not synonymous.'" *Id.* (quoting COMPENDIUM III (2021) §§ 805.5(B)(3), 805.1). The Court then explained that "[t]he COMPENDIUM [III] outlines several elements that choreographic works typically contain, 'although the presence or absence of a given element is not determinative of whether a particular dance constitutes choreography.'" *Id.* (quoting COMPENDIUM III (2021) § 805.2). "These features include 'rhythmic movement in a defined space,' 'compositional arrangement,' 'musical or textual accompaniment,' 'dramatic content,' 'presentation before an audience,' and 'execution by skilled performers.'" *Id.* (quoting COMPENDIUM III (2021) § 805.2(A)–(F)). This Court further explained that "expressive element[s] present in choreography" include "body position, body shape, body actions, transitions, use of space, timing, pauses, energy, canon, motif, contrast, [and] repetition," and that it is the "relationship

between [the dance] movements and patterns, and the choreographer's creative approach of composing and arranging them together, [that] defines the work." *Hanagami*, 85 F.4th at 943-44.

Applying the standard adopted in *Hanagami*, the record in this case shows that the dance routines depicted in the TA Works are protectable choreography—or at least cannot be deemed unprotectable as a matter of law on summary judgment. Anderson "combin[es] particular selections and arrangements of dance steps and other movements that are informed by her TA Method, into final choreographic works that are later produced into live studio performance or video performances." 2-ER-106. Each of the TA Works "features a selection and arrangement of movements informed by the TA Method." 2-ER-107. The TA Works "all involve classic dance steps that are recognized in various dance modalities such as ballet, hip-hop, jazz, and modern dance, as well as modifications to those classic dance steps, and other audio visual elements that are present in many choreographic works." 2-ER-107.

For example, the TA Work titled "Tracy Anderson Unleash Your Inner Pop Star" uses the following dance steps in its choreography: Kick Ball Change, 4th position, Chaine Turn, 2nd Position Grande Plié, Tombe Pas du Bourree, Sauté, Scission, and Paddle Turn. 2-ER-116. This TA Work also includes "[t]hematic elements set to genre of music." 2-ER-117. It also includes the elements of

- 45 -

"rhythmically set to music tempo, movements utilize different body parts and positions, creative choice with body shapes and transitions; and variations in movement[,] speed and tension." 2-ER-116–117.

As another example, the TA Work titled "Tracy Anderson: The Perfect Design Series" uses the following dance steps in its choreography: Ballet Arms – 4th Position, Arabesque, Attitude Position, Rib and Hip Isolations – Jazz, 1st Position Grand Plié, Relevé, and Round de Jambe. 2-ER-110. This TA Work also includes the elements of "rhythmically set to music tempo, movements utilize different body parts and positions, creative choice with body shapes and transitions; and variations in movement[,] speed and tension." 2-ER-110.

The other seventeen TA Works likewise contain particular selections and arrangements of dance steps with creative variations of these elements. 2-ER-106–118. The record also supplies ample evidence of Anderson's "creative approach of composing and arranging the[se dance movements and patterns] together." *Hanagami*, 85 F.4th at 944. For example, in creating her original choreography, Anderson "creat[es] movements or sequences or put[s] creative movements and expressions together in a sequence." 2-ER-32–33; *see also* 2-ER-34–36 (further describing "creative process" and "artistic expression" of resulting sequences); 2-ER-55 (further describing "artistic process" of creating "movements and sequences"); 2-ER-106 (discussing Anderson's "creative process of combining

- 46 -

particular selections and arrangements of dance steps and other movements"). These "creative choices . . . in selecting and arranging elements of the choreography," *Hanagami*, 85 F.4th at 945, underscore the protectable nature of the dance routines in the TA Works.

All these facts show that the TA Works contain protected choreography under this Court's definition in *Hanagami*: "'the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole.'" 85 F.4th at 940 (quoting Compendium III (2021) § 805.1). The features of the dance routines depicted in the TA Works include, for example, "'rhythmic movement in a defined space,'" "'compositional arrangement,'" and "'musical or textual accompaniment,'" *id.* (quoting COMPENDIUM III (2021) § 805.2(A)–(F)). And the "relationship between [the dance] movements and patterns, and the choreographer's creative approach of composing and arranging them together, is what defines" the TA Works. *Id.* at 944. At a minimum, when evaluating the facts in the requisite light most favorable to TAMB, there are triable issues of fact concerning whether *Hanagami*'s definition of choreography is met here.

Viewed from another angle, nothing in the record suggests that the dance routines in the TA Works fall so clearly under the rubric of "uncopyrightable dance" to deprive them of copyright protection as a matter of law. In *Hanagami*, this Court observed that "[t]he Compendium [III] does not draw a bright line distinction

- 47 -

between copyrightable choreography and uncopyrightable dance; instead, there is a continuum on which '[m]any works fall somewhere in between.'" *Id.* (quoting COMPENDIUM III (2021) § 805.5(B)); *see also id.* at 947 (stating that "the four-count portion of Hanagami's choreography may well fall somewhere in the middle" of that continuum). This Court further explained that "there are limitations on what types of movements are copyrightable as choreography." *Id.* at 940. For example, "'[i]ndividual movements or dance steps by themselves are not copyrightable, such as the basic waltz step, the hustle step, the grapevine, or the second position in classical ballet.'" *Id.* (quoting COMPENDIUM III (2021) § 805.5(A)). "Nor will the Copyright Office register 'short dance routines consisting of only a few movements or steps with minor linear or spatial variations, even if the routine is novel or distinctive.'" *Id.* (quoting COMPENDIUM III (2021) § 805.5(A)). Here, the evidence summarized above shows that the choreographed dance routines—which, among other things, "feature[] a selection and arrangement of movements informed by the TA Method," are "rhythmically set to music tempo," show "movements [that] utilize different body parts and positions, creative choice with body shapes and transitions; and variations in movement[,] speed and tension," "and [have] other audio visual elements that are present in many choreographic works," 2-ER-107, 2-ER-110, 2-ER-116–117—go far beyond anything this Court would recognize as merely

uncopyrightable dance. *See Hanagami*, 85 F.4th at 946 (suggesting that, for example, using one's arms to spell out the letters "USA" would not be protectable).

Even if one assumes Defendants discharged their initial burden of rebutting the presumption of validity for sixteen of the nineteen TA Works, the evidence above is more than enough to show that the TA Works contain protected choreography—or at least a genuine dispute of material fact—under this Court's definition in *Hanagami*. Further, to the extent this Court grants TAMB's accompanying motion to transmit physical exhibits and considers the limited video excerpts of the TA Works that Defendants lodged with their summary judgment motion, the excerpts likewise confirm that the TA Works show the performance of "'the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole'"—*i.e.*, "choreography," *Hanagami*, 85 F.4th at 940 (quoting COMPENDIUM III (2021) § 805.1). But even if the Court were not to consider these physical exhibits, the record evidence discussed above is more than sufficient to withstand summary judgment on this issue. And to the extent this Court concludes that the limited video excerpts lodged by Defendants are insufficient to evaluate whether each TA Work as a whole contains protected choreography, that conclusion would be simply another reason why Defendants failed to carry their summary judgment burden.

In sum, when evaluated under the correct legal standards, the TA Works contain protected choreographic expression. And as shown in Section VIII.A above, TAMB's copyright claims are based on the protected expression in the TA Works—not on the underlying TA Method that the district court found to be an unprotectable method, process, or system. Whether the Court conducts the proper analysis on appeal or leaves it to the district court in the first instance on remand, the summary judgment ruling cannot stand.

## IX. CONCLUSION

The district court erred as a matter of law in entering summary judgment against TAMB on its copyright claims. TAMB's copyright claims are based on the asserted TA Works, which contain protected choreography. The summary judgment ruling was based incorrectly on the unasserted TA *Method*, which the district court found to be an unprotectable process. This error and the additional legal errors identified above should be corrected on appeal. The grant of summary judgment on the copyright claims should be reversed and the case should be remanded for further proceedings.

Dated:  February 24, 2025            Respectfully submitted,

*/s/ Stanley J. Panikowski*
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 619.699.2643
stanley.panikowski@us.dlapiper.com

Gina Durham
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2506
gina.durham@us.dlapiper.com

Kristina Fernandez Mabrie
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400
North Tower
Los Angeles, CA 90067
Tel: 310.595.3136
kristina.fernandezmabrie@us.dlapiper.com

*Attorneys for Appellant*
*Tracy Anderson Mind and Body, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-6936

I am the attorney or self-represented party.

**This brief contains** | 11,191 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [            ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Stanley J. Panikowski | **Date** | February 24, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*