**No. 24-6936**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

Tracy Anderson Mind and Body, LLC,

*Plaintiff-Appellant,*

v.

Megan Roup and The Sculpt Society, LLC,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
Central District of California No. 2:22-cv-04735
The Honorable Philip S. Gutierrez

---

**APPELLEES' ANSWERING BRIEF**

---

Nathaniel L. Bach, *NBach@Manatt.com*
Benjamin G. Shatz, *BShatz@Manatt.com*
Sarah E. Moses, *SMoses@Manatt.com*
Andrea Del-Carmen Gonzalez, *ADGonzalez@Manatt.com*
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067-3119
(310) 312-4000 • Fax (310) 312-4224

*Attorneys for Defendants-Appellees*
Megan Roup and The Sculpt Society, LLC

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the Sculpt Society, LLC ("TSS") discloses that it does not have a parent corporation and no publicly held corporation owns a 10% or greater ownership interest in TSS.

May 23, 2025                Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: *s/Nathaniel L. Bach*

*Attorneys for Defendants-Appellees*
Megan Roup and The Sculpt Society, LLC

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 7

JURISDICTION ................................................................................. 8

ISSUES PRESENTED ....................................................................... 9

STANDARD OF REVIEW .................................................................. 9

STATEMENT OF FACTS ................................................................. 10

I.    TAMB Markets Workout DVDs. ................................................. 10

II.   Roup Creates The Sculpt Society. .............................................. 12

III.  The District Court Grants Summary Judgment on TAMB's Copyright Claim. .......................................................................... 13

SUMMARY OF ARGUMENT ........................................................... 15

ARGUMENT ................................................................................... 16

I.    The District Court Correctly Entered Summary Judgment on TAMB's Copyright Claim. ......................................................... 16

    A.    TAMB's Exercise Routines Are Not Copyrightable. ............. 16

        1.    Anderson's Exercises Are Not Copyrightable Under Section 102(b) and *Bikram*. ............................. 17

        2.    The Undisputed Facts Foreclose TAMB's Efforts to Protect Its Workouts as "Choreography." ............... 21

        3.    *Hanagami* Also Forecloses TAMB's Claim. ................. 23

    B.    TAMB's Principal Argument is Wrong, Judicially Estopped and Futile. .................................................... 25

        1.    The District Court Properly Framed TAMB's Copyright Claim as Pleaded and Ruled Thereon. ....... 25

        2.    TAMB is Judicially Estopped from Asserting its Principal Argument. ............................................... 27

        3.    TAMB's Argument is Futile Because Anderson's Exercises Are Uncopyrightable Whether Examined as the "TA Method" or "TA Works." ........... 30

    C.    The District Court Applied the Correct Legal Standards. .......................................................................... 33

3

## TABLE OF CONTENTS
(continued)

**Page**

II.   The Judgment May Also Be Upheld on Other Grounds. .............. 39

    A.   TAMB Is Not the Copyright Owner of the TA Works. ......... 39

CONCLUSION ....................................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bikram's Yoga College of India, L.P. v. Evolation Yoga,*
LLC, 803 F.3d 1032 (9th Cir. 2015)............................................ passim

*Deland v. Old Republic Life Ins. Co.,*
758 F.2d 1331 (9th Cir. 1985) ............................................................ 29

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.,*
122 F.3d 1211 (9th Cir. 1997) ..................................................... 36, 41

*Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.,*
73 F.4th 1048 (9th Cir. 2023) ............................................................ 33

*Ets-Hokin v. Skyy Spirits, Inc.,*
225 F.3d 1068 (9th Cir. 2000) ............................................................ 36

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) ........................................................................... 34

*Hanagami v. Epic Games, Inc.,*
85 F.4th 931 (9th Cir. 2023) ....................................................... passim

*Husain v. Olympic Airways,*
316 F.3d 829 (9th Cir. 2002) ............................................................... 9

*Konigsberg v. Rice,*
16 F.3d 355 (9th Cir. 1994) ......................................................... 40, 41

*New Hampshire v. Maine,*
532 U.S. 742 (2001) ........................................................................... 27

*Pacesetter Consulting, LLC v. Kapreilian,*
No. 21-16244, 2022 WL 4462694 (9th Cir. Sept. 26, 2022)............... 32

*Palmer v. Braun,*
287 F.3d 1325 (11th Cir. 2002) .......................................................... 21

*Perez v. Discover Bank,*
74 F.4th 1003 (9th Cir. 2023) ................................................. 27, 29, 30

*Sovak v. Chugai Pharm. Co.,*
280 F.3d 1266 (9th Cir. 2002) ............................................................ 29

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
  580 U.S. 405 (2017)......................................................................... 34, 39

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
  630 F.3d 1255 (9th Cir. 2011) ............................................................. 36

*United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*,
  555 F.3d 772 (9th Cir. 2009) .............................................................. 30

*White v. City of Sparks*,
  500 F.3d 953 (9th Cir. 2007) ................................................................ 9

## STATUTES

15 U.S.C. § 1051 et seq. ....................................................................... 13

17 U.S.C. § 101 et seq. .................................................................... 17, 29

17 U.S.C. § 102(a) ............................................................................... 24

17 U.S.C. § 102(b) ........................................................................ passim

17 U.S.C. § 204(a) ............................................................................... 40

17 U.S.C. § 410(c) ............................................................ 8, 34, 35, 36, 41

17 U.S.C. § 501(b) ............................................................................... 39

28 U.S.C. § 2111 ................................................................................. 32

## OTHER AUTHORITIES

2 William F. Patry, Patry on Copyright (2018) ....................................... 38

5 William F. Patry, Patry on Copyright (2025) ................................... 34, 36

U.S. Copyright Office, "Registration of Claims to Copyright,"
  77 Fed. Reg. 37607 (June 22, 2012)..................................................... 20

U.S. Copyright Office, COMPENDIUM II,  COMPENDIUM OF
  U.S.COPYRIGHT OFFICE PRACTICES (2d ed. 1984) ................... 19

U.S. Copyright Office, COMPENDIUM III, COMPENDIUM OF
  U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ................. 38

U.S. Copyright Office, Circular 52: Copyright Registration of
  Choreography and Pantomime....................................... 7, 8, 20, 21, 38

## INTRODUCTION

Exercises are not copyrightable. This is true no matter the form they take, be it yoga, aerobics, or dance-cardio. This is the inescapable lesson of this Court's decision in *Bikram's Yoga College of India, L.P. v. Evolation Yoga*, LLC, 803 F.3d 1032 (9th Cir. 2015) ("*Bikram*"), which governs here and holds that exercise routines—even if graceful, aesthetically pleasing, or incorporating choreography—are unprotectable ideas, processes, or methods under Section 102(b) of the Copyright Act.

The district court correctly held that Tracy Anderson Mind and Body, LLC's ("TAMB") copyright claim against Megan Roup and The Sculpt Society, LLC ("Defendants") was based on the alleged copying of unprotectable exercise movements reflected on its workout DVDs ("TA Works")—which the undisputed facts show were designed and marketed to confer health benefits on customers engaging in at-home exercise— and thus barred by *Bikram* and Section 102(b).

TAMB offers no argument that could change this result. It seeks to elevate exercise routines into protectable choreography, but that effort is foreclosed by both *Bikram* and this Court's more recent opinion in *Hanagami v. Epic Games, Inc.*, 85 F.4th 931 (9th Cir. 2023). The U.S. Copyright Office agrees, having advised that "[a] series of aerobic exercises [or a] complicated routine consisting of classical ballet positions or other types of dance movements *intended for use in a fitness class*" are examples of the types of works that are "*not* copyrightable as

7

choreography." U.S. Copyright Office, Circular 52: Copyright Registration of Choreography and Pantomime at 4 (emphases added).

TAMB's principal argument—that the district court improperly focused on the "TA Method" and not the "TA Works"—is wrong, judicially estopped (TAMB having previously taken a contrary position), and futile because the result would be the same under either framing. TAMB's other arguments also lack merit. As TAMB admits, Section 410(c)'s presumption of validity only applies to subject matter that is copyrightable in the first instance, which TAMB's exercises are not; and, even if the presumption applied, Defendants' evidence easily overcame it. Finally, the district court neither wrongly applied a two-step rule nor any *per se* rule regarding the intent and design of movement but rather analyzed the facts and law just as this Court did in *Bikram* to come to the only conclusion available to it under Section 102(b).

At every turn, Section 102(b) and *Bikram* foreclose TAMB's efforts to claim copyright protection over the exercises in its DVDs. In seeking a different result, TAMB effectively asks this Court to overrule *Bikram*, but provides no practical or legal justification for such a radical result, which would upend this Circuit's copyright precedents. Accordingly, Defendants request that this Court affirm the judgment.

## JURISDICTION

Defendants agree with TAMB's jurisdictional statement.

## ISSUES PRESENTED

I. Whether the district court correctly granted summary judgment on TAMB's copyright infringement claim.

II. Whether TAMB is judicially estopped from pursuing its principal argument on appeal.

III. Whether the district court's judgment can be upheld on alternate grounds, including TAMB's lack of ownership of copyrights in the TA Works.

IV. Even if the district court committed error, whether any error was harmless.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo, and may be affirmed on any ground supported by the record, including reasons not relied upon by the district court. *Bikram*, 803 F.3d at 1036 (citing *White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007)). "After viewing the evidence in the light most favorable to the nonmoving party," this Court determines "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted).

Factual findings are reviewed for clear error. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002). If the application of the law to the facts requires an inquiry that is "essentially factual," review is for clear error. *See id*.

9

**STATEMENT OF FACTS**

## I.   TAMB Markets Workout DVDs.

Anderson created her "TA Method," which she describes as a "revolutionary choreography protocol made up of custom and specific movements, sequences, and routines that uniquely combines choreography, fitness, and cardiovascular movement to help people create balance in their bodies so they can create balance in their lives." 2-ER-255 ¶ 1, 1-SER-3–4, 1-ER-5–6. TAMB alleges it is the owner of various registered copyrights in the "TA Works," which are nineteen "DVDs created by and featuring Anderson, that express, relate to, or are based on the TA Method." 1-ER-6, 1-SER-4.

These DVDs include the following, with excerpted descriptions from the product listings on TAMB's website:

- **Metamorphosis Series DVDs**: Versions "dedicated to a different body type (Glutecentric, Hipcentric, Abcentric, Omnicentric). Each version of this 90-day program includes four discs of muscular structure work (nine workouts in total, to transition through every 10 days) that's designed to target problem areas and address the imbalances of each specific body shape. In addition, there's a cardio component, a dynamic eating plan, and a measuring tape and chart to record your progress…. Each workout includes 30 minutes of muscular structure work, and 30 minutes of cardio." 1-ER-6, 1-SER-18–19 (citing 2-ER-144–45, 1-SER-156–58).

- **Glutecentric DVD**: "If you have a shapeless behind and it is your main area of concern, then the Glutecentric workouts would help you create the butt you want. Whether it is too flat or needs a lift, this program is geared to tone down any back fat, get rid of cellulite to gain a distinction between your lifted butt

10

and thighs." 1-ER-6, 1-SER-19 (citing 2-ER-144–45, 2-ER-148, 1-SER-165–66).

- **Abcentric DVD**: "Abcentric workouts are targeted to achieve a flat stomach with workouts concentrating on the lower stomach and back area." 1-ER-6, 1-SER-19–20 (citing 2-ER-144–45, 2-ER-148, 1-SER-163–64).

- **Hipcentric DVD**: "the workouts chosen for this program are aimed to pull in the hips, lifting your butt and getting rid of cellulite." 1-ER-6, 1-SER-20 (citing 1-ER-144–145, 1-ER-148).

- **Omnicentric DVD**: "the workouts Tracy designed for the Omnicentric body are perfect – a full body-skin-tuck. Anything that is droopy or loose about your body will be awakened, firmed and lifted." 1-ER-6, 1-SER-20 (citing 2-ER-144–45, 2-ER-148, 1-SER-166–67).

- **Mat Workout DVD**: "Throughout the hour, you will activate and engage all of your accessory muscles, pull in your larger muscles, and transform your body." 1-ER-6, 1-SER-20–21 (citing 2-ER-151–52, 1-SER-168–69).

- **Perfect Design Series Set (I-III)**: "This three-disc/video set— which includes three 55 minute workouts at the beginner, intermediate, and advanced levels—is designed to create balance and strength in the body. Each workout includes a warmup, along with targeted sequences for the arms, legs, abs, thighs, and butt." 1-ER-6, 1-SER-21 (citing 2-ER-153, 1-SER-170–72).

- **Precision Toning**: "This DVD program focuses on empowering the smaller accessory muscles as they strengthen and support the larger ones throughout the body while you learn the basics of the Tracy Anderson Method. Designed to tone, strengthen and engage every muscle, this is a workout for all skill levels." 1-ER-6, 1-SER-21 (citing 2-ER-156–57, 1-SER-175–76).

- **Unleash Your Inner Pop Star**: "This 50-minute dance cardio DVD . . . will further strengthen your mind and body connection

11

and torch calories." 1-ER-6, 1-SER-21–22 (citing 2-ER-160, 1-SER-173–74). The DVD cover states: "New Patterns To Target Weight Loss / Connect to Your Body / Learn to Dance While You Workout!" 1-ER-6, 1-SER-22 (citing 2-ER-160).

TAMB obtained copyright registrations for the TA Works. Each registration asserts authorship for the "Entire motion picture," and that TAMB obtained ownership via transfer "by written agreement" from one of two other entities, Bubi and Babe Exercise, Inc. or Tracy Anderson Private Training, LLC. 2-ER-183–209.

## II.    Roup Creates The Sculpt Society.

Roup worked part time for TAMB's affiliate T.A. Studio New York LLC ("TANY") from 2011 to February 2, 2017, where she led dance-cardio and other exercises classes. 2-ER-255 ¶ 3, 1-SER-138 ¶ 3. After quitting TANY, Roup developed and launched TSS, a fitness business that currently offers on-demand dance-cardio, sculpting, prenatal, and yoga exercise videos via an app and website, as well as in-person classes. 2-ER-256–57 ¶¶ 5-6, 2-ER-264 ¶ 34. Exercises that are part of TSS's classes have their roots in various disciplines of fitness, muscle-sculpting, dance, yoga, Pilates, barre, meditation, and aerobics, all of which are designed to confer physical and mental benefits on the participant taking the class. 1-SER-139 ¶ 10.

Roup holds a Bachelor of Fine Arts and Dance from New York University, Tisch School of the Arts, and is certified as a Group Fitness Instructor by ACE Certifications and holds Pre- and Post-natal

Certifications by ProNatal Fitness. 1-SER-138 ¶ 2.

In March 2018, TAMB sent Roup a cease and desist letter, demanding that she remove video depicting exercise routines and refrain from using Anderson's movements. 1-SER-140 ¶ 12, 1-SER-142–43. Roup promptly responded, denied TAMB's unsupported allegation and asked for detail about what video TAMB was referring to. 1-SER-140 ¶ 13, 2-SER-278. TAMB never responded during the ensuing four years before filing its complaint. 1-SER-140 ¶ 13.

## III.  The District Court Grants Summary Judgment on TAMB's Copyright Claim.

TAMB filed its First Amended Complaint ("FAC") against Defendants alleging claims for copyright infringement, false advertising under the Lanham Act, breach of contract, and violation of California's unfair competition law. 2-ER-254. As to copyright, TAMB did not allege that Defendants pirated or copied verbatim any footage in its DVDs, but rather alleged that Defendants' streaming and on-demand exercises infringe TAMB's copyrights by copying the "choreography movements, sequences, and routines" reflected on its DVDs. 1-SER-4–5, 2-ER-270 ¶ 51, 1-ER-8.

Defendants moved to dismiss the four claims in the FAC under Rule 12(b)(6). 2-ER-227. The district court granted the motion as to the Lanham Act and state law unfair competition claims (including later granting Defendants' anti-SLAPP motion to strike the unfair competition

13

claim) and denied the motion as to the copyright and breach of contract claims. 2-ER-228, 2-ER-287–88. Following discovery, Defendants moved for summary judgment on the copyright and contract claims; arguing as to copyright that TAMB's exercises reflected on its DVDs are uncopyrightable subject matter under 17 U.S.C. § 102(b) and *Bikram*. 1-ER-7.

The district court granted summary judgment on the copyright claim, ruling that TAMB's DVDs reflect noncopyrightable exercise routines. 1-ER-10–11. The district court examined whether the routines in the TA Works could constitute copyrightable expression, finding "that Anderson's routines are clearly an unprotectable process, system, and/or methodology." 1-ER-10. The district court cited *Bikram*'s recognition that "exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness[,]" and "[s]uch processes, even if original, cannot be protected by copyright." 1-ER-10.

The district court also made factual findings, concluding that "the undisputed evidence, here, establishes that Anderson's routines are fundamentally a system or method of exercise." 1-ER-10. The court observed that because the "undisputed facts prove that the TA Method is in fact a method or system that was designed for the purpose of improving client's fitness and health[,]" that it "is nearly identical in this way to the Sequence in *Bikram*." 1-ER-10.

14

Finally, the district court rejected TAMB's argument that the TA Works contained protectible choreography, including because "Plaintiffs provide no evidence that anyone perceives or understands the TA Method to be a performance art or anything other than an exercise routine." 1-ER-11. As a result, the district court held that no reasonable juror could conclude that Anderson's exercise routines are copyrightable choreography. 1-ER-11.

Following the summary judgment order, the parties resolved the remaining contract claim and the court entered final judgment for Defendants. TAMB appealed the judgment as to the copyright claim only.

## SUMMARY OF ARGUMENT

I. The district court correctly determined that TAMB's exercise routines are not copyrightable under Section 102(b) of the Copyright Act and this Court's precedent in *Bikram*. The undisputed evidence shows that the TA Works are workout DVDs and that no one understands the TA Works and TA Method as containing choreography for anything other than physical and mental well-being and weight loss. At each turn, *Bikram* forecloses TAMB's copyright claim, and this Court's more recent decision in *Hanagami* is in accord and permits no other result.

TAMB's arguments cannot alter the foregone conclusion that the exercise routines depicted on its DVDs are unprotectable. This is particularly true given that TAMB is judicially estopped from making its principal appellate argument, having successfully advanced sweeping

15

arguments seeking protection over the "TA Method" writ large at the motion to dismiss stage. In any event, TAMB's principal argument is wrong on the merits, too.

II. The judgment may also be upheld on alternate grounds. Specifically, TAMB is not the owner of the copyrights in the TA Works, having failed to obtain written transfers of ownership.

## ARGUMENT

### I.  The District Court Correctly Entered Summary Judgment on TAMB's Copyright Claim.

The district court correctly held that TAMB could not prove its copyright claim, which is absolutely barred by this Court's ruling in *Bikram*. *Bikram* confirms that physical exercises—even when dance-based or labeled as choreography—are not copyrightable. TAMB seeks refuge in *Hanagami*, but—as the district court rightly noted—*Hanagami* is in harmony with *Bikram* and does not help TAMB.

On appeal, TAMB advances various arguments for why the district court introduced error into its analysis. None has merit, and none could alter the inevitable conclusion that TAMB's attempt to confer copyright protection over physical exercises was always doomed to fail under *Bikram*.

### A.  TAMB's Exercise Routines Are Not Copyrightable.

TAMB concedes that its copyright claim is only based on the alleged copying of fitness routines depicted in the TA Works. 1-ER-8, 1-SER-4–

16

7. Thus, the question is whether such exercise movements depicted on the TA Works are copyrightable in the first instance. The district court correctly concluded that they are not.

### 1. Anderson's Exercises Are Not Copyrightable Under Section 102(b) and *Bikram.*

The Copyright Act separates subject matter that is copyrightable from that which is not. Section 102(b) provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Section 102(b) was at issue in *Bikram*, in which this Court considered whether Bikram Choudhury's yoga "Sequence" was copyrightable where he held copyright registrations for a book containing "descriptions, photographs, and drawings" of the Sequence's 26 poses, including when registered as a "compilation of exercises." *Bikram*, 803 F.3d at 1035–36.

This Court ruled against Choudhury, holding that "[b]ecause copyright protection is limited to the expression of ideas, and does not extend to the ideas themselves, the Bikram Yoga Sequence is not a proper subject of copyright protection." *Id.* at 1034. The same analysis leads to the inescapable conclusion that TAMB's workout DVDs do not contain copyrightable routines, either.

In *Bikram*, this Court noted that "[t]hough Choudhury emphasizes

17

the aesthetic attributes of the Sequence's 'graceful flow,' at bottom, the Sequence is an idea, process, or system designed to improve health[,]" and "[c]opyright protects only the expression of this idea—the words and pictures used to describe the Sequence—and not the idea of the Sequence itself." *Id.* at 1036. As a result, "[b]ecause the Sequence is an unprotectable idea, it is also ineligible for copyright protection as a 'compilation' or 'choreographic work.'" *Id.* Choudhury's attempt "to secure copyright protection for a healing art: a system designed to yield physical benefits and a sense of well-being . . . is precluded by copyright's idea/expression dichotomy, codified by Section 102(b)." *Id.* at 1039.

Anderson attempts a near carbon-copy of Choudhury's effort, and the similarities are striking.

- Like Anderson, Choudhury developed his method "after many years of research and verification." *Compare Bikram*, 803 F.3d at 1038, *with* 1-SER-7–8.

- Like Anderson, Choudhury called his Sequence a "method." *Compare Bikram*, 803 F.3d at 1035, 1038 *with* 1-SER-8–11.

- Like Anderson, to claim copyright protection, Choudhury highlighted the aesthetic and choreographic aspects of his Sequence. *Compare Bikram*, 803 F.3d at 1036, *with* 1-SER-11.

- And like Choudhury, Anderson attempts to protect functional exercises that are designed to improve physical and mental well-being. *Compare Bikram*, 803 F.3d at 1042, *with* 1-SER-12–18.

18

Rejecting Choudhury's argument that his Sequence was protectable choreography—the same effort Anderson attempts here—this Court held that "[e]ven if the Sequence could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection." *Bikram*, 803 F.3d at 1044. This Court explained that "[t]he Sequence is not copyrightable as a choreographic work for the same reason that it is not copyrightable as a compilation: it is an idea, process, or system to which copyright protection may '[i]n no case' extend." *Id.* (quoting 17 U.S.C. § 102(b)).

Discussing the definition of "dance" in the U.S. Copyright Office's Compendium II: Compendium of Copyright Office Practices, the Court observed that "'successions of bodily movement' often serve basic functional purposes[,]" but "[s]uch movements do not become copyrightable as 'choreographic works' when they are part and parcel of a process." *Id.* (citation omitted). The district court rightly noted that Anderson calls her exercises within the TA Works a "method," one of the same unprotectable subjects listed in Section 102(b). 1-ER-10.

Finally, this Court was prophetic in worrying about precisely the anti-competitive effort that Anderson attempts here:

> Without a proper understanding of the idea/expression dichotomy, one might obtain monopoly rights over these functional physical sequences by describing them in a tangible medium of expression and labeling them choreographic works. The idea/expression dichotomy thus ensures that expansive interpretations of the categories

19

> enumerated as proper subjects of copyright will, "[i]n no case," extend copyright protection beyond its constitutional limits. 17 U.S.C. § 102(b).

*Bikram*, 803 F.3d at 1044.

Thus, there is simply no way for TAMB's copyright claim to survive in the face of *Bikram* and Section 102(b). By advocating for a different result, TAMB effectively asks this Court to overrule *Bikram*, but provides no basis for such a radical, wrongheaded, and unworkable result. Indeed, a ruling for TAMB would throw this Circuit's copyrightability precedents into chaos, ensuring that courts would struggle to reconcile such a precedent with *Bikram* and *Hanagami*, discussed below.

The U.S. Copyright Office agrees with this Court about the non-copyrightability of dance-based exercise, stating that "[e]xercise is not a category of authorship in section 102 and thus a compilation of exercises would not be copyrightable subject matter." Registration of Claims to Copyright, 77 Fed. Reg. 37607 (June 22, 2012). The Copyright Office has specifically considered the overlap of dance and exercise, instructing that "[a] series of aerobic exercises [or a] complicated routine consisting of classical ballet positions or other types of dance movements ***intended for use in a fitness class***" are examples of the types of works that are "***not*** copyrightable as choreography." U.S. Copyright Office, Circular 52: Copyright Registration of Choreography & Pantomime ("Circular 52") at 4, available at https://www.copyright.gov/circs/circ52.pdf (emphases added).

20

Here, it is undisputed that any danced-based routines in the DVD workouts are "intended for use in a fitness class." *Id.*; 1-ER-10. As the district court observed, Anderson markets her workouts as a "researched and results-proven fitness methodology" and "fitness program designed for strategic muscle design[,]" and the TA Works' marketing materials "list the physical benefits they seek to confer on the purchaser." 1-ER-10. Though TAMB was provided ample opportunity, the district court correctly observed that TAMB "provide[d] no evidence that anyone perceives or understands the TA Method to be a performance art or anything other than an exercise routine." 1-ER-11.

Thus, as this Court has noted, "exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright." *Bikram*, 803 F.3d at 1038 (quoting *Palmer v. Braun*, 287 F.3d 1325, 1334 (11th Cir. 2002)).

### 2. The Undisputed Facts Foreclose TAMB's Efforts to Protect Its Workouts as "Choreography."

As the district court correctly held, the undisputed facts permit only one conclusion—that the TA Works are fitness DVDs and the exercise routines thereon are thus not protectable under Section 102(b) and *Bikram*, no matter TAMB's arguments to the contrary. For example, it is undisputed that: (1) TAMB is a fitness business operating in the wellness industry, 1-SER-12–15; (2) the TA Works are workout DVDs, meant for

21

those who cannot take Anderson's aerobic classes in a studio, 1-SER-79–80; and (3) the TA Method is marketed as a "researched and result-proven *fitness methodology*," 1-ER-10, 1-SER-15 (emphasis added), and "*fitness program* designed for strategic muscle design," 1-ER-10, 1-SER-15–18 (emphasis added).

TAMB's head of training admitted that she has never trained professional dancers to perform the TA Method as a performance art and has never seen TAMB advertise the TA Method as a performance art, either. 1-SER-34–38 (citing 1-SER-226:22-25, 1-SER-227:1-4, 1-SER-228:16-20). Rather, TAMB's DVDs (the TA Works) are exercise workouts specifically marketed based on the physical benefits they seek to confer, including weight loss.[1] 1-SER-18–22. These DVDs include "muscular structure work . . . designed to target problem areas and address the imbalances of each specific body shape" (1-SER-18); "Glutecentric workouts [] help you create the butt you want" (1-SER-19); "Abcentric workouts are targeted to achieve a flat stomach with workouts concentrating on the lower stomach and back area" (1-SER-19); Perfect Design Series "workouts . . . designed to create balance and strength in the body" (1-SER-21); and an Unleash Your Inner Pop Star DVD marketed as "New Patterns to Target Weight Loss" and "Learn to Dance While You Workout!" (1-SER-22). Therefore, no matter whether an

---

[1] Certain of TAMB's DVDs are sold with a measuring tape "[f]or the purposes of tracking physical progress." 1-SER-19.

exercise routine in the TA Works "could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection." *Bikram*, 803 F.3d at 1044. Therefore, TAMB's lengthy analysis at the end of its brief seeking to explain why certain combinations of movements could constitute choreography is futile.

TAMB's analogy to *The Nutcracker*, AOB-25, is inapt and undermines its argument. Tchaikovsky's *The Nutcracker* is a ballet (a fine art) that is performed for an audience. TAMB's TA Works are exercise DVDs (workouts) marketed for customers to engage in physical exercise at home. 1-SER-79 ("The DVDs were created to provide access to the TA Method to those who did not live near a TA Studio"). Any comparison between the two and their respective fields—performance ballet versus participatory exercise—only underscores the futility of TAMB's argument.

### 3.    *Hanagami* Also Forecloses TAMB's Claim.

TAMB seeks refuge from *Bikram* in this Court's more recent ruling in *Hanagami*. But, as the district court correctly observed, *Hanagami* is entirely consistent with *Bikram* and does not help TAMB. 1-ER-9. There, this Court considered how and when—on the pleadings, not at summary judgment—to apply the substantial similarity test to choreographic works. *Hanagami*, 85 F.4th at 935. That test is not at issue here; rather,

it is the same question about copyrightability of exercise that this Court assessed in *Bikram*, and which *Hanagami* did not disturb.[2]

On the contrary, and as the district court noted, in *Hanagami* this Court observed that in *Bikram* it "did not need to decide 'whether to adopt the Copyright Office's definition of "choreographic work" or fashion another on our own' because '[e]ven if the [s]equence could fit within some colloquial definitions of dance or choreography, it [would] remain[] a process ineligible for copyright protection.'" 1-ER-9 (quoting *Hanagami*, 85 F.4th at 940; and then quoting *Bikram*, 803 F.3d at 1044). This is true here, too, as explained above. Therefore, the Court need not reach the secondary question of whether the TA Works contain routines that could rise to the level of protectable choreographic works under Section 102(a) because they are ineligible for copyright protection in the first instance. *Bikram*, 803 F.3d at 1044 (functional "movements do not become copyrightable as 'choreographic works' when they are part and parcel of a process"). *Hanagami* thus only underscores that *Bikram* precludes TAMB's copyright claim.

---

[2] The facts of *Hanagami* further highlight the difference with this case. The dance at issue was not offered as part of a workout video. Kyle Hanagami is a well-known "choreographer" who "served on the faculty of three of the top dance studios in Los Angeles[,]" and is known for creating original choreography to be performed for an audience. *Hanagami*, 85 F.4th at 936. Unlike TAMB, he specifically registered the choreography at issue as a choreographic work. *Id.* at 935. And he does not market exercise or weight-loss DVDs.

## B. TAMB's Principal Argument is Wrong, Judicially Estopped and Futile.

TAMB's principal argument on appeal is that the district court erred by focusing on the non-copyrightability of the TA *Method* rather than the TA *Works*. AOB-18–26. This hair-splitting argument bears no weight. As an initial matter, the district court did not make the error of which TAMB asserts it is guilty—rather, the court properly framed and analyzed the issue before it. Second, TAMB is judicially estopped from making its argument, having previously successfully asserted the very position it now asserts is error. Third, TAMB repeatedly conceded that the movements in the TA Works are embodiments of the TA Method, rendering the analysis the same, and dooming TAMB's claim under either framing.

### 1. The District Court Properly Framed TAMB's Copyright Claim as Pleaded and Ruled Thereon.

TAMB's principal argument—that the district court wrongly focused on the "TA Method" and not the "TA Works"—fails because the district court properly framed TAMB's copyright claim as alleged in the FAC and ruled thereon. In other words, it did not make the error that TAMB asserts. The district court correctly described TAMB's copyright claim, citing and quoting the FAC:

> TAMB's copyright claim asserts that Defendants have infringed on the copyrights TAMB has in the TA Works DVDs. FAC ¶¶ 50-56. "Specifically, Defendants' videos copy the choreography, movements, sequences, and routines from the

TA Works." *Id.*

1-ER-8. The court also correctly observed the FAC's allegations that "TAMB is the alleged owner of various registered copyrights in the 'TA Works,' which are nineteen 'DVDs created by and featuring Anderson, that express, relate to, or are based on the TA Method.'" 1-ER-6 (quoting FAC). The district court thus properly framed the issue, as TAMB concedes. AOB-21.

After accurately describing the FAC's allegations, the court analyzed the movements in the TA Works, which—as the FAC admits—"express, relate to, or are based on the TA Method." AOB-20; 1-ER-6. In its analysis, the district court reviewed the facts and held that "the undisputed evidence, here, establishes that Anderson's routines are fundamentally a system or method of exercise[,]" 1-ER-10, and, as a result, "no reasonable juror could find that the TA Method is not a method, process, or system unprotected by § 102," 1-ER-11.

TAMB appears to take issue with the court not adding a concluding (and repetitive) phrase, such as, "because the TA Method is the basis for the TA Works, the TA Works cannot support TAMB's claim for copyright infringement." But because the court already correctly framed the issue as alleged in the FAC, it did not need to repeat itself or add such surplusage. The district court framed the issue exactly as TAMB alleged and ruled thereon—if TAMB objects to that framing, its objection is not with the district court but with its own pleading.

### 2. TAMB is Judicially Estopped from Asserting its Principal Argument.

In any event, TAMB is judicially estopped from making this argument because it successfully advanced the opposite position before the district court. Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)).

A party is estopped from making an argument when "1) its current position is 'clearly inconsistent' with its previous position; 2) 'the party has succeeded in persuading a court to accept that party's earlier position'; and 3) the party, if not estopped, 'would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750-51).

Here, TAMB is estopped because in its opposition to Defendants' Rule 12(b)(6) motion to dismiss the copyright claim ("MTD Opposition"), TAMB repeatedly focused on copyrightability of the "TA *Method*" writ large, asserting that "Plaintiffs allege facts demonstrating that the choreography comprising the ***TA Method*** is protectable, and those factual allegations must be accepted as true at the motion to dismiss stage." 1-SER-249:20-22 (emphasis added).

In its MTD Opposition, TAMB embraced a maximalist approach,

27

arguing that it had appropriately alleged that the TA Method choreography itself was protectable, titling an entire section, "**The TA Method Choreography Is Protectable**." 1-SER-254:4. It then repeatedly focused its copyright argument on the "TA Method," asserting:

- "Plaintiffs allege that the ***TA Method*** expressed in the TA Works contains choreography." 1-SER-255:23-24 (emphasis added);

- "On a motion to dismiss, Plaintiffs' allegations regarding the ***TA Method*** being choreographic must be accepted as true." 1-SER-257:15-17 (emphasis added);

- "Plaintiffs' allegations show that the ***TA Method*** contains a sufficient amount of choreographic authorship to be protectable." 1-SER-258:2-3 (emphasis added); and

- "Plaintiffs allege that the choreography comprising the ***TA Method*** is fixed in tangible media of expression, including the TA Works, under Section 102." 1-SER-254 n.2 (emphasis added).

In other words, the TA Method *is* what TAMB sought to protect via its copyright claim.[3]

Now, however, TAMB takes the opposite tack, arguing that "TAMB's copyright claims *are not based* on the underlying TA Method." AOB-20 (emphasis added). This directly contradicts TAMB's positions

---

[3] The above examples are not exhaustive, and TAMB devoted two pages of its MTD Opposition to contrasting the TA Method with Bikram's yoga sequence, including asserting that "[w]hereas Bikram Yoga is a sequence of static poses, Plaintiffs allege that the ***TA Method*** is a 'continuous choreographed sequence of movements like ballet or contemporary dance.'" 1-SER-256–57 (emphasis added).

quoted above from its MTD Opposition. In so doing, TAMB has taken a "clearly inconsistent" position, previously advancing the same arguments that it now asserts are error. *Perez*, 74 F.4th at 1008 ("A party's current position is clearly inconsistent with its previous position if the current position 'contradict[s]' the previous position." (citation omitted)).

TAMB successfully persuaded the district court to accept its broad position. In the order denying Defendants' motion to dismiss as to the copyright claim, the court specifically cited TAMB's opposition for its argument that "[Plaintiffs'] allegations, which must be treated as true, plausibly establish that the ***TA Method*** contains protectable 'choreographic works' under the Copyright Act." 2-ER-234 (citing 1-SER-256:6-8 (emphasis added)). Having asked the district court to accept its arguments about the copyrightability of the "TA Method"—which the district court did—TAMB cannot now claim error based on the very position it successfully adopted at the pleading stage. *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009) (a party successfully persuades a court to accept its earlier position when the court "accept[s] and relie[s] upon" the position "when making its ruling").[4]

---

[4] *See also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (a party "may not complain on review of errors below for which [they are] responsible" (internal quotes omitted)); *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336 (9th Cir. 1985) ("One who by his conduct induces the commission of some error by the trial court, or, in

TAMB would derive an unfair advantage if not estopped from making this contradictory argument because TAMB now discredits the very argument it previously embraced. *Id.* at 778 (judicial estoppel "was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position." (citation omitted)). TAMB is therefore estopped from making this principal argument on appeal. *Perez*, 74 F.4th at 1009-10.[5]

### 3. TAMB's Argument is Futile Because Anderson's Exercises Are Uncopyrightable Whether Examined as the "TA Method" or "TA Works."

Even if it were not estopped, TAMB's "Works" versus "Method" argument lacks merit because the result is the same under either framing. Indeed, TAMB asserts that the district court's references to the "TA Method" produced a "substantively erroneous conclusion," AOB-21, but does not explain how the result could be anything other than a dismissal based on *Bikram*, which entirely forecloses TAMB's claim.

Specifically, TAMB's argument is futile because the record is littered with TAMB's admissions that the exercises in the TA Works are

---

other words, who has invited error, is estopped from insisting that the action of the court is erroneous." (citation omitted)).

[5] Even if all the elements for judicial estoppel were not present, it is inequitable for TAMB to seek reversal based on a position that TAMB repeatedly and expressly embraced. Such inconsistent action only underscores TAMB's legal contortions to try to escape the inevitable result under Section 102(b) and *Bikram*.

a subset of the exercises that comprise the TA Method. As one example, TAMB admits in both its FAC and opening brief that "*each of the TA Works* 'expresses, relates to, or is based on the TA Method.'" AOB-20 (emphasis added); 2-ER-255, 268. Anderson herself also admitted that all her DVDs are an embodiment of the TA Method, 1-SER-23, meaning that the movements on the TA Works are all subsumed within the noncopyrightable TA Method.

In addition to TAMB's MTD Opposition arguments of the centrality of the TA Method to its copyright claim discussed above, TAMB repeatedly adopted this framing when opposing Defendants' summary judgment motion, admitting that "the TA Method . . . is expressed through the TA Works," 1-SER-124, and that "each of [the 19 TA Works] embodied Anderson's choreographed expression of the TA Method." 1-SER-112. Even when describing Defendants' alleged conduct, TAMB asserted that "Roup is performing choreography movements, sequences, and routines in the TSS Videos that are similar to the *TA Method*." 1-SER-51–52 (emphasis added).

Leaving no doubt, TAMB admitted that its "copyright claim is based on Defendants' intentional copying of the choreography, movements, sequences, and routines depicted in the TA Works, *which are original expressions of the **TA Method** embodied in motion picture form*." 1-SER-4–7 (emphases added).[6] In other words, the exercises embodied on

---

[6] *See also* 1-SER-23 ("Anderson's DVDs contain the original expressions of the TA Method, a choreography protocol, in motion picture form.").

each of the TA Works *are* the TA Method. There is thus no daylight between an analysis of the copyrightability of the TA Method and the copyrightability of the TA Works' exercises, and the result is the same under either framing, meaning that any error here would be harmless.[7] *See Pacesetter Consulting, LLC v. Kapreilian*, No. 21-16244, 2022 WL 4462694, at *3 (9th Cir. Sept. 26, 2022) ("we will not reverse when an error is harmless" (citing 28 U.S.C. § 2111)).

The district court correctly analyzed TAMB's claims through the framework TAMB proposed, noting that "Anderson's routines are explicitly called a 'method'—the TA Method.'" 1-ER-10. In so doing, the court relied on Anderson's *own* description of her exercises as a "method" to find the routines within the TA Works non-copyrightable, correctly observing that "methods are explicitly precluded from protection under § 102." *Id.* Thus, because Anderson's "Method" and its movements are noncopyrightable, so are any of its component exercises featured on the TA Works. *See Bikram*, 803 F.3d at 1038.

Despite ample opportunity, TAMB did not provide any evidence that routines in the TA Works could qualify as something other than unprotectable exercise. *See, e.g.*, 1-ER-11 (noting that "Plaintiffs provide no evidence that anyone perceives or understands the TA Method to be a

---

[7] To the extent there is any confusion between the "TA Method" and "TA Works," it is entirely of TAMB's own making by repeatedly tying them together and substituting one for the other throughout its pleadings and briefs.

performance art or anything other than an exercise routine"). TAMB did not, and could not, provide such evidence because the undisputed evidence shows that the TA Works are *workout* DVDs. 1-ER-10–11. Thus, in addition to being judicially estopped, TAMB's principal argument is wrong on the merits.

## C.  The District Court Applied the Correct Legal Standards.

TAMB also raises three other meritless arguments.

**First**, TAMB argues that its copyright registrations constitute prima facie validity of copyright protection in the routines in the TA Works, asserting the presumption applies to the movements and supposed choreography therein, and that the district court failed to recognize that presumption. AOB-26–29.

As TAMB admits, copyright registrations only cover subject matter that is copyrightable in the first instance. AOB-28 (citing *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056-57 (9th Cir. 2023) (holding that a copyright "registration applies to all 'the material deposited [that] constitutes copyrightable subject matter'")). Yet, TAMB then argues that the protectable "material includes the choreography movements, sequences, and routines depicted in the TA Works." AOB-28; *see also* AOB-42. This assertion directly collides with *Bikram* and Section 102(b), which confirm that TAMB's copyrights in its DVDs (listed for the "Motion Picture" without any reference to

33

choreographic works, 1-ER-183–209, do not extend to the physical exercise routines therein.

In other words, no party (including TAMB) can get around Section 102(b)'s limitations by attempting to stretch the scope of copyright protection to everything that might be contained in a work. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."). There is no presumption under Section 410(c) that TAMB has a valid copyright that stretches to cover uncopyrightable subject matter on its DVDs. *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017) ("A valid copyright extends only to copyrightable subject matter."); 5 William F. Patry, *Patry on Copyright* § 17:110 (2025) ("Section 410(c) . . . does not apply to material that, as a class, is excluded from protection."). Therefore, TAMB's assertion that it "has presumptively valid copyrights in the 'entire motion pictures' that constitute the TA Works, *including the choreography contained in the TA Works*," is incorrect. AOB-11 (emphasis added).

In *Bikram*, this Court had to "determine not the validity of a copyright but rather its scope." *Bikram*, 803 F.3d at 1038. And it directly confronted and rejected the same Section 410(c) argument that TAMB makes here, noting Choudhury's argument that "the supplementary registration [] issued within five years of first publication . . . serves as 'prima facie evidence of the validity of the copyright,'" but stating that

34

"we need not decide whether Choudhury's supplementary registration is prima facie evidence of the validity of the copyright, *for even if it were, the undisputed facts are sufficient to overcome any presumption of validity*." *Id.* at 1038 n.5 (emphasis added).

Thus, in *Bikram*, this Court reviewed the factual record to determine whether "Choudhury's copyright protection for his 1979 book extend[s] to the Sequence itself," answering that "[u]nder the fundamental tenets of copyright law and consistent with the precedents discussed [therein], the answer is no." *Id.* The same is true here. Defendants argued and the district court rightly held that the undisputed facts show that the *scope* of TAMB's copyrights do not extend to the unprotectable exercise movements on the TA Works. 1-ER-10.

Even if Section 410(c)'s presumption did extend to cover uncopyrightable subject matter in the first instance (and it does not), the district court still rightly found, as in *Bikram*, that "the undisputed facts are sufficient to overcome any presumption of validity." *Bikram*, 803 F.3d at 1038 n.5. The district court recognized that TAMB argued its copyrights covered the supposed choreography in the DVDs, 1-ER-8, and then held that the undisputed facts were sufficient to establish that TAMB's copyrights do not extend to such routines on its DVDs, 1-ER-9– 11.

This was more than sufficient to rebut any prima facie presumption that might have applied to TAMB's DVDs. As TAMB's own authorities

35

acknowledge, rebutting the presumption of validity requires a defendant to "simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." AOB-27 (quoting *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011)).[8] In *United Fabrics*, this Court found the presumption unrebutted because "nowhere does [the defendant] set forth facts that rebut the presumption." 630 F.3d at 1257. This is a far cry from this case, where Defendants provided voluminous evidence, including TAMB's own marketing materials, DVD descriptions, and deposition testimony that established the movements in the TA Works are functional exercises. *See supra*, Sec. I.A.2; 1-ER-10 (district court listing the same). This was plenty to rebut any presumption. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1218 (9th Cir. 1997). In other words, to overcome any presumption, all Defendants had to do was to demonstrate why the movements in the TA Works are not copyrightable. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) ("to overcome the presumption of validity, defendants must demonstrate why the photographs are not copyrightable"). Defendants did so, as the district court's analysis shows.

**Second**, TAMB argues that the district court erred by applying a

---

[8] "The prima facie status accorded by section 410(c) is slight." 5 Patry on Copyright § 17:109 ("Defendant must offer a plausible basis for challenging the certificate, either in law or fact, but once such a plausible challenge is mounted, the presumption vanishes.").

two-part test under *Bikram* and *Hanagami*. AOB-29–33. As discussed above, the district court simply recognized this Court's consistent and complementary opinions in *Bikram* and *Hanagami*, each of which confirmed that adopting a definition of choreography is unnecessary when the subject matter of the work at issue is not copyrightable under Section 102(b) in the first instance. *See* 1-ER-9–10.

TAMB tries in vain to leapfrog the threshold copyrightability inquiry to reach the latter analysis of whether any protectable choreography exists in the TA Works, but its reasoning is circular, incorrectly stating that "[m]eeting the second step of the district court's test, therefore, necessarily would satisfy the first step." AOB-31. In other words, TAMB proposes writing out the threshold Section 102 inquiry, which would violate both *Bikram* and *Hanagami*.

**Third**, TAMB asserts that the district court applied a *per se* rule that dance routines intended for exercise are uncopyrightable. The district court did not adopt such a blanket rule, but rather rightly recognized that the design, purpose, and function of movement matters where a party seeks to protect it under the copyright laws, and properly examined the factual record before it. 1-ER-10.

In so doing, the district court followed this Court's lead in *Bikram*, when it looked at the purposes of Choudhury's Sequence in determining that it was not copyrightable, noting his yoga poses are "*designed* to scientifically warm and stretch muscles, ligaments, and tendons in the

37

order in which they should be stretched" and therefore concluding that he improperly sought to copyright "a system *designed* to yield physical benefits and a sense of well-being." *Bikram*, 803 F.3d at 1039 (observing the sequence is "a method *designed* to 'cure, heal, or at least alleviate,' physical injuries and illness" (emphases added)); *see also* Circular 52 at 4 (no copyright protection for ""[a] series of aerobic exercises [or a] complicated routine consisting of classical ballet positions or other types of dance movements *intended* for use in a fitness class" (emphasis added)); 2 William F. Patry, *Patry on Copyright* § 4:22 (2018) ("athletic routines possess a characteristic that is fatal to a claim of choreography: a functional purpose").

This Court concluded that Choudhury's "Sequence remains unprotectable as a process *the design of which* primarily reflects function, not expression." *Bikram*, 803 F.3d at 1040. So, too, here. The district court held that "the undisputed evidence, here, establishes that Anderson's routines are fundamentally a system or method of exercise." 1-ER-10. After summarizing that evidence, it concluded that "[a]ll of these undisputed facts prove that the TA Method is in fact a method or system that was designed for the purpose of improving client's fitness and health," and that "[t]he TA [M]ethod is nearly identical in this way to the Sequence in *Bikram*." *Id.*

TAMB argues that intent is irrelevant, citing the Copyright Office's Compendium III discussion that "[w]hen examining a work for original

authorship, the U.S. Copyright Office will not consider the author's inspiration for the work, creative intent, or intended meaning," and that "copyrightability should be based on how a work is perceived, not how or why it was designed." AOB-40. But this speaks to the Copyright Office's internal examination process in the context of assessing "originality," which is not at issue here. And, in any event, the district court found that TAMB "provide[d] no evidence that anyone *perceives* or understands the TA Method to be a performance art or anything other than an exercise routine." 1-ER-11 (emphasis added).[9]

The district court's evidentiary inquiry is precisely what this Court did in *Bikram*—assessing the facts, purpose, and design of the movements at issue to determine whether they were eligible for copyright protection under Section 102(b). There can be no error in following this Court's lead in so doing.

## II. The Judgment May Also Be Upheld on Other Grounds.

### A. TAMB Is Not the Copyright Owner of the TA Works.

This Court can also uphold the judgment because TAMB lacks copyright ownership of the TA Works. Only copyright owners can bring claims for copyright infringement. 17 U.S.C. § 501(b). The copyright registrations for the TA Works state that TAMB acquired ownership "by

---

[9] TAMB's citation to *Star Athletica* is inapt, as it was a case about clothing design and determining "the proper test for implementing § 101's separate-identification and independent-existence requirements," which are not at issue here. 580 U.S. at 409.

written agreement" from nonparties Bubi and Babe Exercise, Inc. ("B&B Corp.") (12 DVDs) and Tracy Anderson Private Training, LLC ("TAPT") (7 DVDs). 2-ER-183–209, 1-SER-38–39. However, no effective written agreements exist, and "a transfer of copyright is simply 'not valid' without a writing." *Konigsberg v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994) (quoting 17 U.S.C. § 204(a)). Thus, TAMB never acquired copyright ownership of the TA Works and lacks standing.

TAMB's argument in the district court—that two contracts it produced after discovery closed and after Defendants filed their summary judgment motion can belatedly confer standing on TAMB—is incorrect. First, the Contribution and Exchange Agreement between B&B Corp. and TAMB transferred B&B Corp.'s copyrights to a different entity, not to TAMB. 3-ER-300. But that entity (a different LLC) is not a plaintiff in this action, nor even an affiliate or subsidiary of TAMB. 2-SER-276.

In any event, even if that agreement did transfer assets to TAMB, by its terms it only transferred *then-existing* assets, not any that might be later-created or acquired, and thus did not transfer rights to seven of the TA Works (those created after June 1, 2011). 2-ER-183–209. Thus, the Contribution and Exchange Agreement did not transfer ownership of any copyrights to TAMB.

Second, the so-called May 14, 2024 Confirmatory Copyright Assignment Agreement between TAPT and TAMB—signed *after* Defendants filed their summary judgment motion—is also insufficient.

40

To be effective in a situation such as this, *nunc pro tunc* copyright assignments must reliably reflect that an earlier unwritten agreement was actually made and be supported by corroborating evidence—yet, this agreement does neither. *See Konigsberg*, 16 F.3d at 357. This agreement was (1) entered two years into this litigation, (2) after Defendants filed their summary judgment motion, and (3) after Anderson testified that she was not aware of any contracts assigning copyrights to TAMB. 1-SER-39. In *Konigsberg*, this Court held that a writing made "three and a half years" after an alleged oral agreement "and 6 months into a contentious" lawsuit "was not substantially contemporaneous with the oral agreement," and could not satisfy Section 204(a)'s strict requirements. 16 F.3d at 357 ("[T]he writing in question must, at the very least, be executed more or less contemporaneously with the agreement and must be a product of the parties' negotiations."). TAMB failed to offer any testimony from a witness with personal knowledge of any negotiations to satisfy *Konigsberg*'s standard. The evidence is more than sufficient to rebut any presumption under Section 410(c) regarding the validity of TAMB's claim to ownership. *See Ent. Rsch. Grp.*, 122 F.3d at 1218.

In any event, it is undisputed that the copyright registrations for the TA Works all state that TAMB obtained its ownership "by written agreement," 2-ER-184–209, not any unwritten agreement that TAMB later asserted existed in the Confirmatory Copyright Assignment

41

Agreement. Thus, the record cannot support a finding that TAMB received any copyrights from TAPT via unwritten agreement, either.

The Court may uphold the judgment on this basis, too.

## CONCLUSION

Defendants respectfully request that this Court affirm the judgment.

May 23, 2025                    Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: *s/Nathaniel L. Bach*

*Attorneys for Defendants-Appellees*
Megan Roup and The Sculpt Society, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-6936

I am the attorney or self-represented party.

**This brief contains** 8,192 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Nathaniel L. Bach    **Date** 5/23/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*