## Case No. 24-6936

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company,
*Plaintiff-Appellant,*

and

T.A. STUDIO NEW YORK, LLC, a California limited liability company,
*Plaintiff,*

v.

MEGAN ROUP; THE SCULPT SOCIETY, LLC, a California limited liability company,
*Defendants-Appellees.*

_____

*On Appeal from the United States District Court for the Central District of California (Los Angeles),*
*Case No.* 2:22-cv-04735-PSG-E • *The Honorable Philip S. Gutierrez, District Judge*

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## TRACY ANDERSON MIND AND BODY, LLC

STANLEY J. PANIKOWSKI
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 619.699.2643
stanley.panikowski@us.dlapiper.com

KRISTINA FERNANDEZ MABRIE
**DLA PIPER LLP (US)**
2000 Ave. of the Stars, Suite 400, N. Tower
Los Angeles, CA 90067
Tel: 310.595.3136
kristina.fernandezmabrie@us.dlapiper.com

GINA DURHAM
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2506
gina.durham@us.dlapiper.com

*Attorneys for Appellant*
*Tracy Anderson Mind and Body, LLC*

 COUNSEL PRESS · (213) 680-2300          PRINTED ON RECYCLED PAPER 

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT................................................................................2

    A.    Defendants Fail to Justify The District Court's Improper Focus
        On The TA Method Instead Of The Copyrightable Expression
        In The TA Works ...............................................................2

        1.    The District Court Committed Reversible Error By
            Focusing On The TA Method Instead Of The TA Works........3

        2.    Defendants' Judicial Estoppel Argument Lacks Merit
            And Is Waived Anyway.................................................5

        3.    Defendants' "Futility" Argument Lacks Merit......................10

    B.    Defendants Fail To Justify The District Court's Additional
        Legal Errors In Analyzing Copyrightability .........................12

        1.    The Statutory Presumption Of Validity Applies To
            Copyrightability For Sixteen Of The TA Works....................12

        2.    The Law Does Not Support The District Court's Two-
            Part Test For Protectable Choreography.................................14

        3.    There Is No *Per Se* Rule That Dance Routines Intended
            For "Exercise" Are Uncopyrightable......................................16

    C.    Defendants Fail To Show That The Choreographed Dance
        Routines Depicted In The TA Works Are Uncopyrightable As
        A Matter Of Law ...............................................................21

        1.    *Bikram's Yoga* Does Not Support Defendants' Extreme
            Position.....................................................................21

        2.    *Hanagami* Supports The Copyrightability Of The
            Choreographed Dance Routines Depicted In The TA
            Works ......................................................................23

        3.    The *Amicus* Brief Supporting Defendants' Position
            Misapprehends The Law And Record ....................................24

D.    Defendants' Challenge To TAMB's Ownership Of The Copyrights Fails ...............................................................27

III.    CONCLUSION............................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Selden*,
  101 U.S. 99 (1879) ................................................................5

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
  803 F.3d 1032 (9th Cir. 2015) ...................................*passim*

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ..............................................................26

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ...........................................13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................3

*Hanagami v. Epic Games, Inc.*,
  85 F.4th 931 (9th Cir. 2023) ....................................*passim*

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ..............................................................27

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989) ..............................................13

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
  617 F.3d 1146 (9th Cir. 2010) ...........................................30

*Konigsberg Int'l Inc. v. Rice*,
  16 F.3d 355 (9th Cir. 1994) ...........................................29, 30

*L.A. News Serv. v. Tullo*,
  973 F.2d 791 (9th Cir. 1992) ...............................................5

*Magnuson v. Video Yesteryear*,
  85 F.3d 1424 (9th Cir. 1996) ........................................29, 30

*Micro Star v. Formgen, Inc.*,
  154 F.3d 1107 (9th Cir. 1998) ...........................................28

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .................................................................5, 6, 8, 9

*Palmer v. Braun*,
    287 F.3d 1325 (11th Cir. 2002) ...........................................................16

*Perez v. Discover Bank*,
    74 F.4th 1003 (9th Cir. 2023) ........................................................5, 6, 8

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ................................................................26

*Singleton v. Wulff*,
    428 U.S. 106 (1976).................................................................................9

*Star Athletica, LLC v. Varsity Brands, Inc.*,
    580 U.S. 405 (2017).........................................................................17, 18

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
    630 F.3d 1255 (9th Cir. 2011) .......................................................12, 28

**Statutes**

17 U.S.C. § 101 .......................................................................17, 18, 21

17 U.S.C. § 102 .........................................................................3, 18, 21

17 U.S.C. § 102(a) .......................................................................15, 25

17 U.S.C. § 102(a)(4) ..........................................................................15

17 U.S.C. § 102(b) .................................................................................2

17 U.S.C. § 204(a) ...............................................................................29

17 U.S.C. § 410(a) ...............................................................................21

17 U.S.C. § 410(c) ........................................................................12, 13, 27, 28

17 U.S.C. § 501(b) ...............................................................................29

**Other Authorities**

37 C.F.R. § 201.2(b)(7) ............................................................................. 19

49 Fed. Reg. 23125-03 (June 4, 1984) ...................................................... 20

77 Fed. Reg. 37607-01 (June 22, 2012) ............................................. 22, 23

82 Fed. Reg. 45625-01, 45627 (Sept. 29, 2017) ...................................... 19

86 Fed. Reg. 3205-02 (Jan. 14, 2021) ...................................................... 19

COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (2d ed. 1984) § 450.07(a) ................... 13

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) Introduction ................. 19

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 309 ............................ 19

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 310.5 ......................... 18

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.4(B) ..................... 19

COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
    COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 805.4(D) .................... 21

Fed. R. Civ. P. 12(b)(6) ............................................................................. 7

U.S. Const., art. I, § 8, cl. 8 ..................................................................... 26

## I.    INTRODUCTION

The very first line of Defendants' response brief confirms why reversal is needed. Defendants stake their argument on the broad assertion that "[e]xercises are not copyrightable." Response Brief ("RB") at 7. But that is not the law, and that is not the issue in this case. Rather, this appeal concerns the copyrightability of choreographed dance routines set to music, which are depicted in nineteen copyrighted motion pictures. Whether these choreographed dance routines are used for, intended to be used for, or marketed as "exercise" does not dictate their copyrightability. Defendants fail to reconcile their contrary assertion with the governing law that TAMB set forth in detail in its opening brief.

Defendants instead misread *Bikram's Yoga* in the same way that the district court's opinion did. Defendants claim *Bikram's Yoga* is an absolute bar to the copyrightability of what Defendants call "exercise routines." But as shown in TAMB's opening brief (at 34-37), *Bikram's Yoga* held no such thing. That decision instead requires a fact-specific analysis of whether copyright claims are based on protected expression or an unprotectable method. While the particular sequence in *Bikram's Yoga* was held unprotectable, this Court did not foreclose copyright protection for choreography that may be used for "exercise." Nor could it, as the Copyright Act itself protects choreography, with no exception for choreography used for exercise.

- 1 -

Far from justifying the district court's grant of summary judgment, Defendants simply magnify its errors. Defendants rely on a non-existent *per se* rule, improperly focus on the TA Method rather than the TA Works, give short shrift to the statutory presumption of validity, and skip the required analysis of whether the TA Works contain protected choreography as this Court defined it in *Hanagami*.

Defendants' alternative arguments for affirmance lack merit too. Their judicial estoppel argument contradicts the record and is raised too late anyway. Defendants' challenge to TAMB's ownership of the asserted copyrights, if this Court addresses that issue in the first instance, also fails for multiple reasons.

The district court's judgment should be reversed as to TAMB's copyright claims, and the case should be remanded for further proceedings.

## II.    ARGUMENT

### A.    Defendants Fail to Justify The District Court's Improper Focus On The TA Method Instead Of The Copyrightable Expression In The TA Works

In its opening brief (at 18-26), TAMB showed that its copyright infringement claims are based on the choreographic expression contained in the TA Works and the district court erred by analyzing the wrong thing—*i.e.*, the TA Method. Defendants trivialize this pivotal distinction as mere "hair-splitting." RB at 25. But the principle that the creative expression of an idea is distinct from the idea that is expressed is fundamental to copyright law. *See* 17 U.S.C. § 102(b); *Feist*

*Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 349 (1991). The particular choreographic expression in the nineteen copyrighted TA Works is the basis of TAMB's copyright claims. The claims are not based on the TA Method. And it is undisputed that there is no merger of the TA Works and the underlying TA Method: Defendants do not argue merger, the district court did not find it, and the record could not support it anyway. Defendants' response to what they acknowledge is "TAMB's principal argument on appeal" (RB 25) is thus legally and factually flawed.

### 1.    The District Court Committed Reversible Error By Focusing On The TA Method Instead Of The TA Works

In support of their "hair-splitting" contention, Defendants cherry-pick three references to the TA Works in the background section of the district court's opinion and claim this was enough. RB 25-26. But these excerpts merely quote and cite the First Amended Complaint as background and do not contain the district court's analysis and ruling on summary judgment. *See* 1-ER-6; 1-ER-8. As shown in TAMB's opening brief (at 14-15, 21-24), the district court's substantive analysis focused on the TA Method and only once mentioned the TA Works. Defendants skip over all of this in their response brief, except to disprove their own point in quoting the district court's ultimate conclusion that "no reasonable juror could find that the TA Method is not a method, process, or system unprotected by § 102." RB 26 (quoting 1-ER-11).

Defendants also misapprehend TAMB's argument when they claim "TAMB appears to take issue with the court not adding a concluding (and repetitive phrase), such as 'because the TA Method is the basis for the TA Works, the TA Works cannot support TAMB's claim for copyright infringement.'" RB 26 (the internal quotation marks surround a hypothetical quote written by Defendants). Again, TAMB's opening brief explains why, under the Copyright Act and this Court's precedent, it is important to analyze the asserted TA *Works* rather than the unasserted TA *Method*. *See* Opening Brief ("OB") at 18-26, 36-37, 41-50. The district court's substantive focus on the wrong thing would not be cured by simply tacking on Defendants' hypothetical phrase.

Moreover, Defendants' hypothetical quote reflects an independent legal error. Defendants reason that "'because the TA Method *is the basis for* the TA Works, the TA Works cannot support TAMB's claim for copyright infringement.'" RB 26 (emphasis added). But no authority supports the illogical proposition that expression (here, the TA Works) is uncopyrightable simply because it is *based on* an idea or method (like the TA Method). Quite the opposite: it is difficult to conceive of any expression that is not in some way based on an idea, method, system, or process (e.g., *The Nutcracker* is based on the uncopyrightable ballet method). That does not make the expression uncopyrightable. If it did, then nothing would be protected by copyright. Accordingly, even if Defendants' hypothetical quote accurately

- 4 -

summarized the district court's rationale, it would only be another reason why the decision is wrong. *See, e.g.*, *Baker v. Selden*, 101 U.S. 99, 102 (1879) (holding that book's expression of book-keeping system was protected by copyright even though system itself was not); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 795 (9th Cir. 1992) (holding that copyright protection extends to "the forms in which ideas and information are expressed and not to the ideas and information themselves").

TAMB's copyright infringement claims are based on the choreographic expression embodied in the nineteen TA Works. 2-ER-268–271. The district court erred by analyzing the underlying TA Method instead of the particular expression in each of the copyrighted TA Works. 1-ER-10–11. Defendants have not shown otherwise, and the judgment should be reversed for this reason alone.

### 2. Defendants' Judicial Estoppel Argument Lacks Merit And Is Waived Anyway

Defendants also try to sidestep the district court's failure to analyze the TA Works with a meritless and belated judicial estoppel argument. RB 27-30. Judicial estoppel applies when: "1) [the party's] current position is 'clearly inconsistent' with its previous position; 2) 'the party has succeeded in persuading a court to accept that party's earlier position'; and 3) the party, if not estopped, 'would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). None of these conditions exist here, much less all three.

<u>First</u>, there is no inconsistency, let alone a "'clear[] inconsisten[cy],'" between TAMB's argument that copyrightability must focus on the choreographic expression in the TA Works and any prior position. *Id.* (quoting *New Hampshire*, 532 U.S. at 750). This appeal is from the district court's summary judgment ruling. Yet Defendants do not allege any inconsistency between TAMB's position in its summary judgment opposition and its arguments on appeal. *See* RB 27-30. Nor could they. *See, e.g.*, 1-SER-117–120. Defendants instead reach back to TAMB's opposition to Defendants' motion to dismiss ("MTD"). RB 27-30. But the district court's summary judgment ruling does not rely on TAMB's arguments in opposition to the MTD. 1-ER-5–13. Nor does it rely on any of the analysis in the prior MTD ruling. 1-ER-5–13. In fact, the summary judgment order's only reference to the MTD stage is a single sentence in the procedural background that does not even mention the copyright claims. 1-ER-7.

Even if TAMB's arguments in its MTD opposition were relevant here, Defendants have not shown they are inconsistent, much less "'clearly inconsistent,'" with TAMB's appeal arguments. *Perez*, 74 F.4th at 1008 (quoting *New Hampshire*, 532 U.S. at 750). Most of the statements that Defendants cite from TAMB's MTD opposition refer to the "choreography" or "choreographic" authorship that is the subject of the copyright claims. *See* RB 27-28 (quoting 1-SER-249:20-22, 1-SER-254:4, 1-SER-255:23-24, 1-SER-257:15-17, 1-SER-258:2-3, and 1-SER-254 n.2).

- 6 -

The other statement that Defendants cite was made in the context of distinguishing *Bikram's Yoga* in response to Defendants' reliance on that case. *See* RB 28 n.3 (citing 1-SER-256–257). And even that statement, which Defendants flag as representative of TAMB's arguments on those two pages of its MTD opposition, refers to "a 'continuous choreographed sequence of movements.'" 1-SER-257.

Defendants also ignore the statements in TAMB's MTD opposition that refer expressly to the TA Works. *See, e.g.*, 1-SER-252:21-24 (stating that "Defendants' videos infringe TAMB's copyrights by copying the choreography movements, sequences, and routines depicted in the TA *Works*; organizational structure and format of the TA *Works*; and aesthetic elements depicted in the TA *Works*." (emphasis added)); 1-SER-254:1-2 (arguing that "Defendants are incorrect because (1) Plaintiffs have adequately alleged that the choreography in the TA Works is copyrightable . . ."); 1-SER-253:15-19 ("Plaintiffs allege that Defendants infringed TAMB's copyrights in the TA Works by publishing TSS videos that copy the choreography from the TA Works. . . . Defendants do not argue that they did not copy the TA Works, but instead that the choreography constitutes unprotectable 'functional exercise movements.'" (citations omitted)); *see also* 1-SER-249:19-20 (stating that Defendants infringe TAMB's copyrights "by publishing videos that copy the choreography from the DVDs"). Moreover, the copyright claims in the First Amended Complaint—the crux of the MTD analysis, *see* Fed. R. Civ. P. 12(b)(6)—

- 7 -

consistently alleged infringement of TAMB's copyrights in the TA Works. *See, e.g.*, OB 11-12, 19-21 (citing 2-ER-268–271).

Second, Defendants have not shown that the district court relied on any allegedly inconsistent statements in denying the MTD as to the copyright claims. TAMB never argued—much less "'succeeded in persuading'" the district court— that the MTD should be denied because its copyright claims were based on the TA Method rather than the TA Works. *Perez*, 74 F.4th at 1008 (quoting *New Hampshire*, 532 U.S. at 750). The district court's MTD decision likewise did not turn on any notion that the TA Method, and not the TA Works, was somehow the focus of the copyright claims. Rather, the district court ruled that "determining the protectability of Plaintiffs' *copyrighted works* would require the Court to conduct a detailed factual analysis unfit for ruling on a motion to dismiss." 2-ER-235 (emphasis added).

Defendants' contrary argument is both incorrect and misleading. Defendants provide the following quotation in their brief: "'[Plaintiffs'] allegations, which must be treated as true, plausibly establish that the **TA Method** contains protectable "choreographic works" under the Copyright Act.'" RB 29 (emphasis and alteration in original). Defendants then provide a citation to the district court's MTD ruling as if it were the source of the quotation: "2-ER-234 (citing 1-SER-256:6-8)." RB 29. But the district court's opinion contains no such quotation; rather, the words come from TAMB's MTD opposition, so the proper citation would be "1-SER-256:6-8

- 8 -

(cited in 2-ER-234)." Aside from Defendants' misstep, while this statement from TAMB's MTD opposition mentions the TA Method, it focuses on the "protectable 'choreographic works'" that are the basis of the copyright claims. 1-SER-256:6-8. For all these reasons, Defendants fall well short of showing any judicial reliance on an allegedly inconsistent position.

Third, Defendants have not shown that TAMB "'would derive an unfair advantage or impose an unfair detriment on [Defendants]'" if not estopped. *Id.* (quoting *New Hampshire*, 532 U.S. at 751). Because there was no clear inconsistency and no reliance, there could not be any unfairness. Moreover, even if any credence were given to Defendants' characterizations of the MTD proceedings, both the First Amended Complaint and TAMB's summary judgment briefing made crystal clear that the copyright claims are based on the TA Works, not the underlying TA Method. *See, e.g.*, 2-ER-268–271; 1-SER-117–120. There is no unfairness in challenging, on appeal, the summary judgment decision's focus on the TA Method when the complaint and summary judgment briefing were laser-focused on the TA Works for TAMB's copyright claims.

Finally, aside from its lack of merit, Defendants' judicial estoppel argument is waived. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). The focus of TAMB's appeal arguments is exactly the same as it was at

summary judgment. If Defendants thought there should be judicial estoppel based on an alleged inconsistency with the MTD proceedings, the time to raise that argument was at summary judgment. But Defendants did not. Defendants' meritless judicial estoppel argument is therefore waived.

### 3.     Defendants' "Futility" Argument Lacks Merit

Defendants also wrongly argue that the distinction between the TA Works and the TA Method does not matter. RB 30-33. Defendants misstate the relationship between the TA Works and the TA Method when they say that "the exercises in the TA Works are a subset of the exercises that comprise the TA Method" and "the movements on the TA Works are all subsumed within the noncopyrightable TA Method." RB 30-31. To the contrary, TAMB alleged in its complaint, explained in its briefing, and showed through citations to the record that: (1) the TA Works are copyrighted motion pictures that show particular choreographed dance routines; (2) the TA Method is an underlying choreography protocol that can be expressed in various ways; and (3) the choreographed routines in the TA Works are among the ways to express the TA Method. *See, e.g.*, OB 1, 7-9, 19-21; 2-ER-37–38; 2-ER-106–118; 2-ER-172; 2-ER-255; 2-ER-259; 2-ER-268. Defendants cannot avoid the legal consequences of these facts by instead attacking a distorted, straw-man version of TAMB's actual allegations and arguments. And if Defendants dispute these facts,

then that factual dispute is simply another reason why summary judgment was inappropriate.

Defendants' quotations of TAMB's actual words undermine the mistaken characterizations that Defendants present in their own words. For example, Defendants state that TAMB "admits" that "'*each of the TA Works* "expresses, relates to, or is based on the TA Method."'" RB 31 (quoting OB 20, 2-ER-255, and 2-ER-268 (emphasis in original)). But that is exactly TAMB's point, in the same way that any creative work expresses, relates to, or is based on an underlying method, system, process, or idea.

Likewise, Defendants quote TAMB's statements that "'the TA Method . . . is expressed through the TA Works'" and "'each of [the 19 TA Works] embodied Anderson's choreographed expression of the TA Method'" as if they were some sort of harmful admission. RB 31 (quoting 1-SER-124 and 1-SER-112). But again, Defendants' quotations reinforce TAMB's point: the TA Works embody choreographed expression of the underlying TA Method, and this distinction is crucial to properly analyzing whether the TA Works contain protected choreographic expression. Because the district court analyzed the wrong side of this distinction, the judgment should be reversed.

**B.    Defendants Fail To Justify The District Court's Additional Legal Errors In Analyzing Copyrightability**

The district court's failure to analyze the particular choreographic expression in the TA Works is reason enough to reverse and remand. *See* OB 18-26. But Defendants also cannot overcome the additional legal errors in the summary judgment decision: (1) failing to apply the presumption of validity; (2) fashioning an incorrect two-part test for analyzing claims of protectable choreography; and (3) applying an improper *per se* rule that dance routines intended for exercise are uncopyrightable.

**1.    The Statutory Presumption Of Validity Applies To Copyrightability For Sixteen Of The TA Works**

TAMB showed in its opening brief (at 26-29) that the district court failed to apply the statutory presumption of validity for the sixteen TA Works that are entitled to that presumption under 17 U.S.C. § 410(c). Defendants respond, in circular fashion, that the presumption does not apply to uncopyrightable subject matter. RB 33-35. But the whole point of the statutory presumption is that TAMB starts with the advantage on this question for sixteen of the TA Works, and Defendants have the burden to overcome the presumption. *See United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011). The presumption of validity extends to the Copyright Office's determination that the "entire motion picture" for each TA Work, which includes the choreographed dance routines depicted in those works, is

- 12 -

copyrightable subject matter. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) ("[T]o overcome the presumption of validity, defendants must demonstrate why the photographs are not copyrightable."); *see also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989) (explaining that the presumption "shifts the burden of proof to the defendants to demonstrate why plaintiff's organizers are not copyrightable" (quotations and citation omitted)). TAMB cited these cases for this proposition in its opening brief (at 27-28), yet Defendants fail to absorb their implications or otherwise defeat § 410(c)'s presumption. *See* RB 33-36.

Defendants' attempt to distinguish between the "entire motion picture" and the choreography embodied in the TA Works is also unavailing. *See* RB 33-35. The copyright registrations for the TA Works, which claim protection for the "entire motion picture," extend to all of the visual and aural elements depicted in the deposits, including the selection and arrangement of dance movements—*i.e.*, choreography—as a whole. *See* COMPENDIUM II: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (2d ed. 1984) § 450.07(a) ("A choreographic work may be embodied in motion-picture form. If such a motion picture constitutes the deposit for registration, the registration extends only to what is disclosed therein."); *see also* OB 10-11, 28, 38, 42-43.

- 13 -

Defendants also wrongly suggest that the district court actually applied the presumption when they argue "the district court still rightly found, as in *Bikram*, that 'the undisputed facts are sufficient to overcome any presumption of validity.'" RB 35 (quoting *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1038 n.5 (9th Cir. 2015)). But that is only a quote from *Bikram's Yoga*. The district court's summary judgment opinion does not contain this quote or any similar language. Rather, the district court's only mention of a presumption was in its summary of TAMB's arguments. 1-ER-8 ("Plaintiffs respond that . . . TAMB enjoys a presumption of ownership of the copyrights."). To the extent Defendants suggest that the failure to apply the presumption was harmless, TAMB has already refuted that point too. *See* OB 29. The district court expressly imposed on TAMB the burden to establish copyrightability without any regard for Defendants' initial burden to overcome the presumption. *See* 1-ER-9–10. And the district court's conclusion that TAMB failed to meet this incorrectly-placed burden is at the heart of its summary judgment decision. *See* 1-ER-9–10 (especially the paragraph that bridges these two pages).

### 2. The Law Does Not Support The District Court's Two-Part Test For Protectable Choreography

Defendants' attempt to justify putting the "copyrightable expression" cart before the "protectable choreography" horse also fails. *See* RB 36-37. As TAMB explained in its opening brief (at 29-33), protectable choreography *is* copyrightable

- 14 -

subject matter under 17 U.S.C. § 102(a)(4). The Copyright Act does not generically define copyrightable expression, but rather defines it in relation to the specific categories of "works of authorship" listed in § 102(a). That is why satisfying the second step of the district court's test (Is it protectable choreography?) necessarily satisfies the first (Is it copyrightable expression?). It is also why addressing the first step requires analysis of the second. Defendants wrongly label this logical reasoning "circular." RB 37. The reasoning is circular only if one accepts the district court's test as a correct statement of the law, which TAMB's opening brief showed it is not.

Defendants' claim that *Bikram's Yoga* and *Hanagami* support the district court's test cannot be squared with those decisions. As explained in TAMB's opening brief (at 30-31), this Court in *Bikram's Yoga* analyzed whether the yoga sequence constituted protectable choreography as part of its overall inquiry into whether the claims in that case were based on copyrightable expression. 803 F.3d at 1043-44. It did not, as Defendants would have it, bifurcate the two inquiries and make one a threshold requirement. *See id.* Nor did this Court bifurcate the inquiry in *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 941-45 (9th Cir. 2023). Rather, this Court applied its definition of choreography as part of its analysis of whether the plaintiff had plausibly alleged substantial similarity based only on the protectable elements of his expression, as opposed to unprotectable elements like ideas, methods, or processes. *Id.*; *see* OB 32-33.

- 15 -

### 3. There Is No *Per Se* Rule That Dance Routines Intended For "Exercise" Are Uncopyrightable

The premise of Defendants' response brief is their misguided blanket assertion that "[e]xercises are not copyrightable." RB 7. Yet Defendants curiously insist that the district court never applied such a *per se* rule. *See* RB 37-39. A straightforward review of the district court's decision disproves Defendant's assertion.

The district court stated: "Courts have found that '"exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright."'" 1-ER-10 (quoting *Bikram's Yoga*, 803 F.3d at 1038 (in turn quoting *Palmer v. Braun*, 287 F.3d 1325, 1334 (11th Cir. 2002))). The court also cited the Copyright Office's Circular 52 for the proposition that "'a complicated routine consisting of classical ballet positions or other types of dance movements intended for use in a fitness class'" is "exclud[ed] from copyrightable subject matter." 1-ER-10 (quoting U.S. Copyright Office, Circular 52: Copyright Registration of Choreography and Pantomime ("Circular 52") at 4). The court then found that the "undisputed facts prove that the TA Method is in fact a method or system that was designed for the purpose of improving client's fitness and health." 1-ER-10. The district court thus ruled that the "TA Method" is uncopyrightable

because "Anderson's routines are fundamentally a system or method of exercise." 1-ER-10.

The district court emphasized that this finding was dispositive when it said that it "need not reach the issues of *whether the TA Method could be considered choreography* and if TAMB actually owns the copyrights." 1-ER-11 (emphasis added). These statements show that the district court *did* apply a *per se* rule that dance routines intended for "exercise" are uncopyrightable regardless of whether they meet this Court's definition of "choreography" in *Hanagami*. And as explained in TAMB's opening brief (at 33-41), the district court's *per se* rule conflicts with the Copyright Act, this Court's precedent, and Supreme Court precedent.

Defendants' attempt to align the district court's approach with *Bikram's Yoga* also fails. *See* RB 37-39. Whatever analogy may exist between the TA Method and Bikram's Yoga Sequence is irrelevant because the TA Method is not what TAMB seeks to protect through copyright here. When the actual focus of its claims—the TA Works—is properly analyzed, there is no analogy to the Sequence in *Bikram's Yoga*. *See, e.g.*, OB 36-37, 42-50.

Defendants also try to distinguish *Star Athletica* merely because "it was a case about clothing design and determining 'the proper test for implementing § 101's separate-identification and independent-existence requirements,' which are not at issue here." RB 39 n.9 (quoting *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S.

- 17 -

405, 409 (2017)). But Defendants fail to acknowledge that precedential decisions often have implications beyond the specific statutory provision directly at issue in the case. TAMB's opening brief (at 37-40), by contrast, explained both the specific issue before the Supreme Court in *Star Athletica* and the broader consequences of the Court's decision for cases like this one. In short, the same principle that copyrightability does not turn on intent or marketability applies equally to the analysis of copyrightability under 17 U.S.C. § 102. Like the portion of § 101 at issue in *Star Athletica*, § 102 identifies objective criteria and does not prescribe any subjective criteria for making copyrightability determinations. The Copyright Office likewise has recognized the broader relevance of *Star Athletica* to copyrightability determinations. *See* OB 40 (discussing COMPENDIUM III: U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 310.5). Defendants' shabby treatment of *Star Athletica* in this single-sentence footnote fails to grapple with any of this.

Defendants try to distinguish part of the Compendium's statement about the irrelevance of "the author's intent" as addressing the originality requirement. *See* RB 38-39. But Defendants ignore the part where the Copyright Office says more broadly that "[t]he Supreme Court has made it clear that copyrightability should be based on how a work is perceived, not how or why it was designed." *See* COMPENDIUM III (2021) § 310.5 (citing *Star Athletica*, 137 S. Ct. at 1015). The Compendium likewise

- 18 -

makes clear that intent is irrelevant to copyrightable subject matter when it states: "When examining a claim to copyright, a registration specialist will use objective criteria to determine whether the work satisfies these requirements by reviewing the information provided in the application and by examining the deposit copy(ies), including its individual elements as well as the work as a whole." COMPENDIUM III (2021) § 309 (titled "Examining a Work for Copyrightable Authorship"); *see also* COMPENDIUM III (2021) § 805.4(B) (the Copyright Office uses "objective criteria to determine whether a choreographic work" is registrable and "will not consider subjective criteria . . . such as the author's intent").

The Copyright Office's statements concerning the Compendium also refute Defendants' (and the district court's) reliance on Circular 52 to support an intent-based test. *See* RB 1, 7-8, 20, 38; 1-ER-10. The Compendium "is the administrative manual of the Register of Copyrights concerning Title 17 of the United States Code and Chapter 37 of the Code of Federal Regulations." COMPENDIUM III (2021) Introduction at 1; *see* 37 C.F.R. § 201.2(b)(7). All versions of the Compendium relevant to this appeal have also been published pursuant to a notice-and-comment process in the Federal Register. *See* Compendium of U.S. Copyright Office Practices, 86 Fed. Reg. 3205-02 (Jan. 14, 2021); Compendium of U.S. Copyright Office Practices, 82 Fed. Reg. 45625-01, 45627 (Sept. 29, 2017) (noting that the Copyright Office removed "competitive ice skating," "synchronized swimming,"

- 19 -

"parades," "marching band routines," and several other activities "from the examples of physical activities that cannot be registered as a pantomime or a choreographic work" and that it will evaluate such claims on a "case-by-case basis"); Compendium of U.S. Copyright Office Practices, 49 Fed. Reg. 23125-03 (June 4, 1984). As such, the Compendium takes precedence over Circulars, which do not go through such a notice-and-comment process and are expressly subordinated to the Compendium by the Copyright Office's own statements. *See* "Circulars," https://www.copyright.gov/circs/ ("For full details regarding the Office's policies and procedures, refer to the *Compendium of U.S. Copyright Office Practices, Third Edition*.") (last visited July 14, 2025); *see also* Circular 52 at 5 n.1 (explaining that "Copyright Office practices and procedures are summarized in the third edition of the *Compendium of U.S. Copyright Office Practices*"). Because the Copyright Office has repeatedly stated that an author's intent or purpose for a work should not be considered in determining whether a work is copyrightable, Circular 52's outlier use of an "[e]xample[]" of "a complicated routine . . . intended for use in a fitness class" should be given no weight. Circular 52 at 4.

Finally, Defendants fail to square the district court's intent-based *per se* rule with the Copyright Act itself. Nothing in the Copyright Act states or suggests that the intended use or benefits of a work are material to its copyrightability. *See* OB

37-38 (discussing 17 U.S.C. §§ 101, 102, & 410(a)). Defendants offer no discernible response, much less a persuasive one, to this point.

Accordingly, if the particular dance routines in the individual TA Works otherwise qualify for copyright protection under § 102 of the Copyright Act—which they do—this protection cannot be withdrawn based on any "health and fitness" purposes associated with the TA Works or how those works are marketed. Defendants' and the district court's contrary approach should be rejected.

### C. Defendants Fail To Show That The Choreographed Dance Routines Depicted In The TA Works Are Uncopyrightable As A Matter Of Law

The arguments above, plus the corresponding sections of TAMB's opening brief, refute much of Defendants' argument against copyrightability in pages 16 to 24 of their response brief. TAMB addresses the residue of Defendants' argument, plus the *amicus* brief, below.

#### 1. *Bikram's Yoga* Does Not Support Defendants' Extreme Position

Defendants rely on the same incomplete quotation of *Bikram's Yoga* as the district court to support their overbroad *per se* rule that anything deemed "exercise" cannot be copyrighted. Specifically, Defendants assert that "'exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright.'" RB 21 (quoting *Bikram's Yoga*, 803 F.3d at 1038). But as

- 21 -

TAMB showed in its opening brief, the complete version of the quoted sentence from *Bikram's Yoga*, along with its context and the other cases discussed in that portion of the opinion, does not support Defendants' *per se* rule. OB 34-37. Defendants fail to engage with TAMB's showing, but instead persist in the same misreading of *Bikram's Yoga* they had successfully urged upon the district court.

Defendants also offer a bullet-pointed list of superficial comparisons between this case and *Bikram's Yoga*. RB 18. But this list improperly focuses on the TA Method rather than the TA Works, and it highlights facts that do not dictate whether the choreographed dance routines in the TA Works are protected by copyright.

Finally, Defendants' reliance on the Copyright Office's observation that "'[e]xercise is not a category of authorship in section 102 and thus a compilation of exercises would not be copyrightable subject matter'" is unavailing. RB 20 (quoting Registration of Claims to Copyright, 77 Fed. Reg. 37605-01, 37607 (June 22, 2012) (alteration in original)). There is no dispute that a simple exercise move, such as a jumping jack or push-up, is not copyrightable, but that is not the issue before this Court. Here, the TA Works contain sequences of dance steps from ballet, jazz, hip-hop, and modern dance, *see* OB 45-49, which are the building blocks of choreographic works. *Hanagami*, 85 F.4th at 940. The Copyright Office statement above does not purport to alter the Copyright Office's policies with respect to copyrightable choreography—*i.e.*, that copyrightable choreography is "the

composition and arrangement of a related series of dance movements and patterns organized into an integrated, coherent, and expressive whole." 77 Fed. Reg. at 37607. Moreover, even if the TA Works incorporate certain "exercise movements," the Copyright Office's statement expressly recognizes that "a choreographic work, such as a ballet or abstract modern dance, may incorporate simple routines, social dances, or *even exercise routines* as elements of the overall work." *Id.* (emphasis added); *accord* COMPENDIUM III (2021) § 805.4(D). Hence, there is no legal basis for a *per se* rule that a selection and arrangement of dance steps (even with exercise moves) cannot constitute copyrightable choreography if it is intended for use or marketed as "exercise."

### 2. *Hanagami* Supports The Copyrightability Of The Choreographed Dance Routines Depicted In The TA Works

Defendants' argument that "*Hanagami* Also Forecloses TAMB's Claim" repackages the district court's improper two-part test to avoid applying *Hanagami*'s binding definition of choreography to this case. *See* RB 23-24. Defendants also drop a footnote that sprinkles some allegedly distinguishing facts about *Hanagami*. RB 24 n.2. But Defendants do not tie this smattering of facts to *Hanagami*'s definition of choreography or otherwise make any effort to show that the choreographed dance routines depicted in the TA Works do not meet this definition. *See* RB 24 n.2. Instead, Defendants wrongly argue that such analysis is unnecessary under *Bikram's Yoga* and *Hanagami*. *Compare* RB 23-24 *with* OB 21-26, 29-33.

- 23 -

In *Hanagami*, this Court held that "[c]horeography is, by definition, a related series of dance movements and patterns organized into a coherent whole. The relationship between those movements and patterns, and the choreographer's creative approach of composing and arranging them together, is what defines the work." 85 F.4th at 944. Here, the record shows that each TA Work depicts dance movements and patterns that are "related," "organized into a coherent whole," and a product of Tracy Anderson's "creative approach of composing and arranging them together." *See* OB 44-47. Contrary to Defendants' assertion, nothing more is required to show that the TA Works contain protected choreography.

Defendants also recite a litany of facts that get them nowhere because they simply pertain to intent and marketability questions that TAMB has shown are irrelevant to copyrightability. *Compare* RB 21-23 *with* OB 33-41. At the same time, Defendants ignore facts set forth in TAMB's opening brief that are material to the definition of choreography that this Court adopted in *Hanagami*. *See* OB 44-49. Defendants' selective focus on irrelevant facts at the expense of facts that do matter under this Court's precedent is another reason why their arguments fail.

### 3. The *Amicus* Brief Supporting Defendants' Position Misapprehends The Law And Record

The *amicus* brief supporting Defendants' position mostly echoes Defendants' already-refuted legal errors. The *amicus* brief is rooted firmly in the legally erroneous proposition that intent controls the copyrightability of choreographed

dance routines. *See* Dkt. 33.1 at 2-5. *Amici* also posit a novel category of "unprotectable 'choreography'" that is directly at odds with the Copyright Act's categorical protection for choreographic works under 17 U.S.C. § 102(a). *See* Dkt. 33.1 at 7. There is no support in the Copyright Act for the proposition that a sequence of dance movements that otherwise would qualify as choreography is uncopyrightable if that same sequence is intended or marketed for health and fitness purposes.

Even if intent were relevant, the *amicus* brief improperly makes sweeping assertions about the supposedly "functional" purpose of the choreographed dance routines depicted in the TA Works while ignoring the significant record evidence that the TA Works have artistic and expressive purposes too. *Compare* Dkt. 33.1 at 6-7 *with* OB 45-47; *see also* OB 7-9. The record thus contradicts *amici*'s unsupported labeling of the TA Works' choreographed dance routines as "non-expressive," Dkt. 33.1 at 7. *See* OB 7-9, 45-47.

Further, *amici*'s stated concern that protecting the TA Works could grant "private monopolies over basic bodily movements, stifling health, wellness, and physical education efforts," Dkt. 33.1 at 3, misapprehends the law and record. This Court in *Hanagami* cautioned that "reducing choreography to 'poses' would be akin to reducing music to just 'notes.'" 85 F.4th at 944. But the *amicus* brief commits precisely that error.

- 25 -

*Amici*'s alarmism also ignores various limitations on the scope of copyright protection. This Court noted in *Hanagami* that "[i]ndividual movements or dance steps by themselves are not copyrightable," nor are "short dance routines consisting of only a few movements or steps with minor linear or spatial variations," because "they are the building blocks of choreographic expression from which all choreographic works are built." 85 F.4th at 940 (quotations and citations omitted). Copyright protection for choreography—like all copyrightable subject matter—is also limited by the doctrines of merger, scenes à faire, and fair use. *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law"); *Eldred v. Ashcroft*, 537 U.S. 186, 190-91 (2003) (discussing copyright law's "built-in First Amendment accommodations," including the idea/expression dichotomy and fair use).

Accordingly, neither precedent nor common sense suggests that a medical professional's use of discrete "sequences of movements" in a therapeutic regimen is threatened by protecting choreographed dance routines like those depicted in the TA Works. But affirmance would broadly undermine the legal protection that the Copyright Act confers on choreographic works—and thus weaken the creative incentives that are at the heart of copyright law. *See* U.S. Const., art. I, § 8, cl. 8 (empowering Congress "[t]o promote the Progress of Science and useful Arts, by

securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"). As the Supreme Court has explained, "the Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985). The intent-based, *per se* rule that the district court, Defendants, and *amici* have embraced would undermine this incentive for creators of choreographic works that may be used for exercise, without the corresponding benefits that *amici* posit.

### D. Defendants' Challenge To TAMB's Ownership Of The Copyrights Fails

Defendants' alternative argument regarding copyright ownership, which the district court did not reach, also lacks merit. *See* RB 39-42.

The certificates of registration issued by the Copyright Office reflect TAMB's ownership of the copyrights in the TA Works. Sixteen of the nineteen TA Works were registered within five years of first publication, and all nineteen registrations list TAMB as the copyright claimant. 2-ER-184–205.

For the sixteen TA Works registered within five years of first publication, the certificates "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). This Court has repeatedly held that this presumption includes the identity of the copyright owner and the chain of

title. *See United Fabrics*, 630 F.3d at 1258 ("As the copyright claimant, [plaintiff] is presumed to own a valid copyright, 17 U.S.C. § 410(c), and the facts stated therein, including the chain of title in the [work], are entitled to the presumption of truth."); *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1109-10 (9th Cir. 1998) (a party's "copyright registration creates a presumption of ownership").

Defendants have not presented any evidence to rebut this presumption. Defendants' reliance on the mere absence of certain documents from the record is insufficient as a matter of law. *See United Fabrics*, 630 F.3d at 1257-58 (holding that defendant could not rebut presumption merely by arguing that plaintiff had failed to provide evidence of a valid transfer). Defendants' argument fails for those sixteen TA Works for this reason alone.

The three remaining TA Works were registered six and a half years after first publication, and the applications to register them were filed at the same time as the other sixteen TA Works. 2-ER-185–186; 2-ER-189. It is within the adjudicating court's discretion, and reasonable in these circumstances, to afford the same evidentiary weight to the certificates for those three TA Works. *See* 17 U.S.C. § 410(c) ("The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").

Further, the record contains evidence of valid written assignments transferring sufficient legal or beneficial ownership of the TA Works to TAMB. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right."); 3-ER-300–305 (Contribution and Exchange Agreement transferring assets of Bubi & Babe Exercise, Inc. ("B&B") to Bubi & Babe Exercise, LLC ("B&B LLC") and transferring to TAMB of 100% of the membership interests in B&B LLC); 2-ER-93–95 (confirmatory assignment from Tracy Anderson Private Training, LLC ("TAPT") to TAMB).

Regarding the copyrights that were transferred from TAPT to TAMB, this Court has long recognized that a subsequent confirmatory assignment satisfies the writing requirement of 17 U.S.C. § 204(a), so long as it reflects the parties' intent to transfer ownership. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996) (memorandum of conveyance executed after the transfer satisfied the writing requirement). Defendants are thus wrong to suggest the absence of a contemporaneous written assignment at the time of transfer defeats TAMB's ownership of these TA Works.

Defendants' reliance on *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994), is also misplaced. In *Konigsberg*, the alleged transfer was between the author and a third party; the author and third party disputed whether the transfer had

- 29 -

occurred and the terms of the alleged transfer; and the writing was a contentious letter sent by the author to the third party years later. *Id.* Thus, "the problem with the writing in that case was not so much that it was not contemporaneous with the agreement but that it was 'not the *type* of writing contemplated by section 204' because it 'came far too late to provide any reference point for the parties' license disputes.'" *Magnuson*, 85 F.3d at 1429 n.1 (quoting *Konigsberg*, 16 F.3d at 357). Here, by contrast, there is no dispute between TAMB and any transferor of copyrights in the TA Works regarding the validity of the transfer to TAMB. This Court has made clear that where there is no dispute between transferee and transferor, a defendant cannot avoid liability for infringement based on alleged deficiencies in the chain of title. *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010).

Defendants' meritless ownership challenge, if not left to the district court in the first instance, therefore should be rejected.

## III.   CONCLUSION

Defendants' response brief doubles down on the legal errors that warrant reversal. The overbroad *per se* rule they advocate should be rejected as unsupported by precedent and incompatible with the Copyright Act. The summary judgment should be reversed and the case should be remanded.

Dated:  July 14, 2025                      Respectfully submitted,

*/s/ Stanley J. Panikowski*
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 619.699.2643
stanley.panikowski@us.dlapiper.com

Gina Durham
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2506
gina.durham@us.dlapiper.com

Kristina Fernandez Mabrie
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400
North Tower
Los Angeles, CA 90067
Tel: 310.595.3136
kristina.fernandezmabrie@us.dlapiper.com

*Attorneys for Appellant*
*Tracy Anderson Mind and Body, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-6936

I am the attorney or self-represented party.

**This brief contains** 6,982 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Stanley J. Panikowski  **Date** July 14, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*